ROGER L. COLLINS, Plaintiff-Appellant, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF GENOA, Defendant-Appellee.

Second District    No. 79-653

Opinion filed June 2, 1980.

Jack D. Armstrong, of Dan Walker Law Offices, of Oak Brook, for appellant.

Robert C. Becker, Jr., of Genoa, and John C. Brohier, of Borde, Berke & DiLeonardi, of Chicago, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Roger Collins, appeals from a judgment of the Circuit Court of De Kalb County affirming an administrative review (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the decision of the defendant, Board of Fire and Police Commissioners of the City of Genoa (the Board), to discharge Collins from his position as a police officer.

The relevant charges against Collins arose from three incidents which occurred in August 1977, September 1977, and March 1978. The evidence produced at the hearing concerning the August 7, 1977, occurrence (the Sanders Incident) may be summarized as follows. At approximately 4 a.m. on August 7, 1977, Collins was on routine patrol when he observed an automobile with its license plate hanging down and right headlight damaged cross the center line of the road. Collins stopped the vehicle. Its occupants were two unfamiliar black males. Collins spoke with the driver, named Sanders, and asked him to get out of the car. He determined that the driver had been under the influence of some type of alcoholic liquor due to the smell on his breath. After obtaining Sanders'

consent to submit to the breath test, Collins called the De Kalb County sheriff's department and the Sycamore police department to request a breathalyzer operator, but none was available. (The Genoa police department does not have a breathalyzer of its own.) Collins admitted that he could arrest a subject for driving under the influence based on visual observation; he stated, however, that there was not sufficient evidence to win a case in court. Instead, he simply allowed Sanders to stand outside and get some fresh air "hoping that it would help to unimpair his ability." He subsequently let Sanders go.

Shortly after Collins released Sanders, he heard a police dispatch indicating that the Sanders vehicle had been involved in a hit-and-run accident in rural Aurora. Knowing that Sanders was driving eastbound on Route 72, Collins notified the State police and immediately commenced pursuit. He stopped the Sanders vehicle four miles east of Genoa on Route 72. State Trooper Elton Self arrived on the scene approximately five minutes later. Trooper Self testified that there was sufficient visual evidence to give rise to an arrest for driving while intoxicated. He also testified that, at his suggestion, Collins (the only officer who had seen Sanders driving) arrested Sanders for driving while intoxicated. Sanders was transported to Sycamore where a breathalyzer examination was given by Self with positive results.

The testimony concerning the September 9, 1977, occurrence (the Arrest Card Incident) was as follows. While on routine patrol in downtown Genoa on the night in question, Collins arrested Ronald Johnson for the possession of cannabis. Collins took Johnson to the police station, where he completed the attendant paperwork pursuant to police procedures. Collins testified that, in his haste to process the subject because there were only two officers on duty that weekend night, he neglected to have Johnson sign the arrest card. After Johnson had posted bond and left, Collins realized his oversight. Knowing that the Department of Law Enforcement and the Bureau of Identification would not accept unsigned cards, Collins signed Johnson's name.

Collins gave the paperwork to Marida Heaton, the radio dispatcher, for filing. Heaton testified that after Collins left the station, she noticed that the arrest card was not present. She then went into the officers' room where Collins had processed Johnson and found the unsigned card lying on the desk. Later that evening, Collins returned to the station, went into the officers' room, and came out in a matter of seconds with the card signed. Heaton stated that when she questioned Collins as to whether the signatures on the arrest card and the bond certificate were the same, Collins told her that they were. He also told her that the signatures were not alike because he had told Johnson that he had to write very neatly on the arrest card since it would appear in court. Collins acknowledged these

statements, and added that he did not want to admit his error in signing Johnson's name to the arrest card.

Collins testified that he received a phone call the next morning from an unidentified Genoa resident informing him that Johnson was aware that Collins had signed the arrest card. Collins then attempted to locate the documents, and discovered that they were in Chief Shaw's possession. He then contacted the State's Attorney for De Kalb County and informed him of his action. By his own testimony he admitted that his reason for calling was fear of reprimand or criminal action. Collins also discussed the matter with Chief Shaw, who informed Collins that he would contact him at a later date as to what action, if any, would be taken in the matter. Chief Shaw never reprimanded or criticized Collins for his action.

Testimony was further presented as to the March 1, 1978, occurrence (the Evidence Handling Incident). The Genoa police department has no written rules or regulations regarding the handling of evidence. Arlo Rissman, the evidence officer, testified that there is an oral departmental policy for handling evidence requiring that the arresting officer make a written report and place the evidence in an evidence locker, where it is subsequently picked up by the evidence officer and locked in an evidence room. Rissman stated that the purpose of the procedure is to maintain the "chain of custody" so that the evidence is properly admissible at trial.

Collins arrested William Hunt for the possession of cannabis on March 1, 1978. Although Collins admitted that he was aware of the departmental policy and further that it was explained to him by Officer Rissman, he did not place the 15 to 19 grams of cannabis in the evidence locker. Rather, he placed the cannabis in his own locker and took it to the crime lab himself. When he received the report from the crime lab, he personally delivered it to the State's Attorney's office. Collins stated that his actions were motivated by prior experience where he had not received reports back from the crime lab prior to trial. He further stated that what he did was to eliminate two people from the chain of evidence. Neither Officer Rissman nor Chief Shaw ever discussed the incident with Collins. William Hunt subsequently pleaded guilty to the offense.

Based on this evidence, the Board found Collins guilty of the following charges: (1) forging a signature on an official arrest card contrary to his duty to file truthful reports and records of arrest; (2) failing to assume general responsibility to arrest a subject for driving while intoxicated, which conduct constituted conduct unbecoming a police officer and brought the Genoa police department into disrepute; and (3) failing to follow departmental procedures for the handling of evidence in a criminal charge of possession of cannabis. The Board made various findings of fact with reference to its decision. A number of other charges against the plaintiff were dismissed by the Board. The Board found

Collins not guilty of many of the remaining allegations against him. The other charges are not the subject matter of this appeal.

The questions before this court are (1) whether the evidence supports the findings of the Board, and (2) if so, whether they present sufficient cause to warrant plaintiff's discharge.

I.

Collins argues that the Board's findings are against the manifest weight of the evidence. The findings and conclusions of the Board on questions of the fact must be considered *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274; *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160, 1165.) The function of a reviewing court is to ascertain whether the findings are not contrary to the manifest weight of the evidence. If, however, the record does not disclose evidentiary support for the Board's determination, a reviewing court must not hesitate to grant relief. *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 359, 307 N.E.2d 371, 375.

■■ After a review of the record, we cannot say that the Board's findings of fact concerning the Arrest Card Incident were against the manifest weight of the evidence. Collins contends that there is not evidence in the record that he intentionally and deliberately falsified an official report. He further contends that his activity subsequent to filling out the arrest card, namely, that he notified the State's Attorney and Chief Shaw in an attempt to correct his error, could not reasonably raise the inference of forgery and coverup. He also highlights parts of the record which demonstrate that there was no written procedure to follow in cases where an arrest card was not signed, and that he was never criticized or reprimanded regarding this incident until these charges were brought against him some seven months later. However, Collins admitted to Officer Rissman, Chief Shaw and the State's Attorney that he signed Johnson's name to the arrest card. Although his intent may not have been willful or deliberate, there is uncontradicted evidence to support the inference that he indeed falsified the signature. His subsequent behavior does not excuse his initial actions. The record discloses that Collins contacted the State's Attorney only after he had received a phone call and feared that criminal sanctions and/or reprimand were imminent. We therefore conclude that the Board's finding that Collins improperly signed Johnson's signature on the arrest card contrary to his duty to file truthful reports and records of arrest is supported by the record.

Similarly, we reject Collins' contention that the Board's findings with respect to the Evidence Handling Incident were against the weight of the evidence. Collins highlights parts of the record which demonstrate that

the Genoa police department was a loosely run organization with no written rules or regulations for handling evidence. He argues that his actions were done in the legitimate best interests of the department and that a conviction resulted. He also argues that the collective silence of Officer Rissman and Chief Shaw can only be taken as admissions that his actions were totally unobjectionable. We do not agree. Collins has been a policeman since 1969. He admitted that he was aware of the departmental procedure, albeit verbal, for handling evidence. Notwithstanding his knowledge, he undertook to handle the matter as he deemed fit. Although his motivation may have been to improve on the department's procedures, we agree with the Board that it was improper to disregard the established procedures rather than to seek their modification. The fact that William Hunt subsequently pleaded guilty and, hence, that the evidence was unnecessary does not mitigate against Collins' violation of departmental rules.

■■ We agree with Collins, however, that the Board's finding that he was guilty of conduct unbecoming a police officer and brought the Genoa police department into disrepute by not arresting Sanders must fail. While the standard "conduct unbecoming a police officer" is an elastic term subject to a wide variety of differing interpretations depending upon the individual conceptions of how policemen should conduct themselves (*Hruby v. Board of Fire & Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132), there is no evidence in the record that Collins' actions lowered the morale or visited disrepute upon the Genoa police department. Moreover, the decision whether to arrest or not for driving while under the influence of intoxicating liquor lies within the discretion of the arresting officer. We are also disposed to agree with Collins' contention that Trooper Self's testimony is not highly probative inasmuch as he was not present at the initial stop. We therefore conclude that the record does not disclose evidentiary support for the Board's determination in the Sanders incident.

## II.

■■ The next question is whether there is a basis in the record for the Board's finding of "cause" to discharge Collins. The Board's power to discharge is derived from the statutory standard of "cause" (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—18.1). This has been judicially defined as a substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275; *Kreiser v.*

*Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The Board argues that on the basis of the above described incidents it had cause to discharge Collins. We cannot agree. While in some cases a single valid finding of a violation of departmental rules will sustain a dismissal (*Noro v. Police Board* (1977), 47 Ill. App. 3d 872, 365 N.E.2d 419; *King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 377 N.E.2d 102), in this case the complained of incidents are not so detrimental to the discipline and efficiency of service as to warrant dismissal. We are impressed by the fact that none of the incidents were viewed by police officials as severe enough to necessitate disciplinary action at the time they took place. Indeed with respect to the Arrest Card Incident, not only did the department fail to reprimand Collins in any way, but the police chief suggested that in the future Collins merely write "refused" on the card if he neglected to get a signature, apparently whether or not the suspect in fact refused to sign. In light of this evidence, we believe that the conclusion is inescapable that the department did not view the authenticity of the signatures on arrest cards as a significant matter.

This is not to say that under the facts of this case, the department's failure to take timely disciplinary action bars the imposition of any sanctions against Collins. (*Cf. Harrison v. Civil Service Com.* (1953), 1 Ill. 2d 137, 115 N.E.2d 521.) However, the inaction of police officials establishes that the complained of conduct is not serious enough to warrant discharge.

Accordingly, the judgment of the Circuit Court of De Kalb County is reversed, and this cause is remanded to the Board for a consideration of penalties less severe than discharge. See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31, 370 N.E.2d 511, 513.

Reversed and remanded.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.