ERIC SINDERMANN, Plaintiff-Appellant, v. THE CIVIL SERVICE COM-
MISSION OF THE VILLAGE OF GURNEE *et al.*, Defendants-Appellees.

Second District   No. 2—95—0029

Opinion filed October 25, 1995.

Brian A. Schroeder, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Bruce C. Mackey and Terrence T. Creamer, both of Franczek, Sullivan, Mann, Crement, Hein & Relias, of Chicago, for appellees Valerie Boettle Ceckowski, Michael Hughes, Stanley Miller, and Civil Service Commission of Village of Gurnee.

Paul E. Lehner and Thomas W. Snyder, both of Schuyler, Roche & Zwirner, P.C., of Chicago, for appellees Henry Schwarz and John Ward.

JUSTICE BOWMAN delivered the opinion of the court:

Defendants John Ward, former chief of police of the Village of Gurnee, and Henry Schwarz, Gurnee's interim chief of police of the Village of Gurnee (Chief), filed charges of misconduct before defendant Civil Service Commission of the Village of Gurnee (Commission) against plaintiff Eric Sindermann, a Gurnee police officer. Defendants Michael Hughes, Stanley Miller, and Valerie Boettle Ceckowski are members of the Commission (commissioners). After conducting a hearing, the Commission found plaintiff guilty of misconduct and discharged him. Plaintiff then brought this complaint for administra-

tive review against defendants pursuant to the Administrative Review Law (Review Law) (735 ILCS 5/3—101 *et seq.* (West 1994)). The trial court affirmed the findings and conclusions of the Commission in all respects, and plaintiff appealed to this court. We affirm.

## BACKGROUND

The following summary of the facts is taken from the record. In November 1986, the Illinois Department of Transportation (IDOT) hired plaintiff as a full-time seasonal snowplow operator. IDOT employs such operators each year from November 16 through March 31. Plaintiff worked at least 40 hours per week while he was employed by IDOT. Apparently in late December 1986, plaintiff, while fueling an IDOT truck at an IDOT facility, drove away from the fuel pump before removing the nozzle of the pump from the gas tank. The pump was pulled out of its base and rendered inoperable. Plaintiff's actions did not cause any injury or fire. On February 17, 1987, IDOT sent a letter to plaintiff stating: "This is to advise you that your services with the Illinois Department of Transportation will be terminated on February 20, 1987, at the close of business due to careless equipment operation." Plaintiff did not work for IDOT after February 20, 1987.

On October 19, 1989, plaintiff filled out a written employment application for the position of probationary patrol officer with the police department of the Village of Gurnee (department). The first paragraph of the application form stated:

"Read every question carefully and ANSWER EACH QUESTION ACCURATELY. An applicant may be disqualified from further processing if he/she intentionally makes a false statement of a material fact, practices or attempts to practice any deception or fraud in his/her application, examination of appointment. Any false statements on this application will be considered sufficient cause for dismissal. *** If space provided is not sufficient for complete answers or if you wish to provide additional information, show on the reverse side of the application and number answers to correspond with questions."

Question 17 asked the applicant to list his past work record. In response to question 17, plaintiff listed two past employers, North Loop Heating and the Gurnee fire department. For North Loop Heating, plaintiff listed his dates of employment as June 1984 to the date of the application. For the Gurnee fire department, plaintiff listed his dates of employment as October 1987 to February 1989. Question 19 asked the applicant if he had ever been discharged or asked to resign from any employment. In response to this question, plaintiff checked the space labelled no. Plaintiff also signed an affidavit attached to the employment application. This affidavit stated, in part, that "I have

personally read and answered each and every applicable question herein, and do solemnly swear that each and every answer is whole and correct in every respect." Plaintiff was subsequently hired as a police officer.

Plaintiff was a Gurnee police officer for approximately three years when he became involved in what the parties refer to as "the Cerone incident." On June 18, 1993, between 3 and 5 p.m., plaintiff responded to a call concerning a fight between two teenagers. While en route to the scene, plaintiff was informed over the radio that the youths involved in the altercation were fleeing and that one of the suspects in the altercation was "Mark Cerone." Plaintiff knew where the Cerone residence was located and proceeded directly there. While en route, plaintiff observed an individual matching the description of "Mark Cerone" running in the direction of the house. He lost sight of this individual, however, and never observed anyone actually enter the Cerone residence. Upon his arrival at the house, he walked into the garage, walked up the stairs leading to the kitchen door, opened the door and entered the house. Plaintiff did not have a search warrant. Plaintiff located Michael Cerone inside the residence and escorted him outside. Soon thereafter, additional officers arrived on the scene.

In late June 1993, Commander Terry Mors interviewed plaintiff about the incident, but plaintiff was not disciplined. Meanwhile, sometime in the spring of 1993, the department received an anonymous tip that plaintiff had worked for IDOT. By the fall of 1993, the department had confirmed that IDOT had employed plaintiff.

On September 21, 1993, the department placed plaintiff on paid administrative leave. On October 2, 1993, plaintiff was interviewed about the Cerone incident and about his employment application. On October 26, 1993, Chief Ward filed charges with the Commission seeking plaintiff's discharge. The charges stated that "[a] summary of Officer Sindermann's disciplinary record is set forth as Attachment A to this Notice." Attachment A contained a summary of plaintiff's disciplinary record. On November 29, 1993, the Chief filed amended charges with the Commission. Like the first set of charges, the amended charges included a summary of plaintiff's disciplinary record. On January 3, 1994, the Chief filed a final amended set of charges. These charges accused plaintiff of misconduct based on (1) plaintiff's falsification of his employment application with the department; and (2) plaintiff's violation of departmental rules and constitutional requirements in the Cerone incident. The final set of charges stated that "the Department will offer Officer Sindermann's performance and disciplinary record with the Department in aggravation of the charges."

The hearing on the charges consisted of testimony taken on several days spread over a four-month period. Before testimony began, plaintiff moved the Commission to appoint a special officer to hear the charges, because the attachments to the charges, which summarized his disciplinary record, prejudiced his right to a fair hearing. The Commission denied the motion.

At the hearing, plaintiff testified as an adverse witness. Plaintiff testified that IDOT terminated his employment after the fuel pump incident. Plaintiff could not specifically recall why he had been terminated, but he knew it was related to the fuel pump incident. Also, plaintiff could not initially recall if he had received a letter from IDOT advising him of his termination. However, once the February 17, 1987, letter of discharge was shown to him, plaintiff admitted receiving it. Plaintiff also admitted that he failed to list three additional employers other than IDOT in response to question 17 of the employment application form.

On April 26, 1994, the Commission issued its findings and decision. The Commission found that plaintiff knowingly failed to disclose on his employment application that IDOT had employed and discharged him and that plaintiff's testimony on this matter was internally inconsistent, evasive, and not credible. The Commission also found that plaintiff's warrantless entry into the Cerone residence violated the Cerone family's constitutional rights.

After considering aggravating and mitigating factors, the Commission concluded that plaintiff's failure to report his employment and discharge by IDOT "demonstrated a substantial shortcoming which renders continuance in employment in some way detrimental to the discipline and efficiency of the Police Department of the Village of Gurnee and something which the law and sound public opinion recognize as cause for the officer no longer occupying his position." The Commission then ordered plaintiff discharged as a police officer. The Commission noted, however, that plaintiff's actions at the Cerone residence, viewed in isolation, were insufficient grounds for dismissal. The Commission therefore considered plaintiff's actions at the Cerone residence as an aggravating factor of the charges against plaintiff.

Plaintiff brought a complaint for administrative review against defendants pursuant to the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1994)). The trial court affirmed the findings and conclusions of the Commission. Plaintiff then filed this timely appeal pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301) and section 3—112 of the Review Law (735 ILCS 5/3—112 (West 1994)).

## DISCUSSION

On appeal, plaintiff contends (1) the Commission should have appointed a special officer to hear the charges; (2) the Chief was barred from filing charges against plaintiff as a result of the Cerone incident; (3) plaintiff's entry into the Cerone residence was constitutional; (4) plaintiff's failure to include his prior employment by IDOT on his employment application was a *de minimis* violation and unrelated to his duties as a police officer; and (5) the admission into evidence of plaintiff's disciplinary record violated the Personnel Record Review Act (820 ILCS 40/0.01 *et seq.* (West 1994)).

Before addressing the contentions, however, it is appropriate to explain the standard of review. Section 10—1—45 of the Illinois Municipal Code (Civil Service in Cities Act or Act) (65 ILCS 5/10—1—45 (West 1994)) provides that judicial review of the Commission's decision shall be in accordance with the Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). Section 3—110 of the Review Law provides that our review "extend[s] to all questions of law and fact presented by the entire record before the court." (735 ILCS 5/3—110 (West 1994).) Our review is limited to the record before us—we may not hear new or additional evidence. (735 ILCS 5/3—110 (West 1994).) Moreover, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1994).

Given these statutory guidelines, a reviewing court's function is to ascertain whether the findings and decisions of the agency are against the manifest weight of the evidence. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88.) A finding is against the manifest weight of the evidence only if an opposite conclusion is clearly evident. (*Abrahamson*, 153 Ill. 2d at 88.) The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the agency's findings. *Abrahamson*, 153 Ill. 2d at 88.

## I

We now turn to the merits of the appeal. Plaintiff first contends that the Commission should have appointed a special officer to hear the charges filed against plaintiff. As explained above, the original and amended charges contained attachments summarizing plaintiff's disciplinary history with the department. According to plaintiff, the inclusion of these attachments destroyed the Commission's ability to impartially judge the charges levied against him, thus denying him his right to due process of law guaranteed by the Illinois and Federal constitutions.

The due process clauses of the Illinois and Federal constitutions prohibit the State from depriving any person of life, liberty, or property, without due process of law. (See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2.) "[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." (*Abrahamson*, 153 Ill. 2d at 92.) Although fundamental principles of due process apply to administrative proceedings (*Abrahamson*, 153 Ill. 2d at 92; *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 369), procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding. *Abrahamson*, 153 Ill. 2d at 92; *Telcser v. Holzman* (1964), 31 Ill. 2d 332, 339.

Nevertheless, procedural due process in an administrative proceeding must include the opportunity to be heard, the right to cross-examine adverse witnesses, and impartial rulings on the evidence. (*Daly v. Pollution Control Board* (1994), 264 Ill. App. 3d 968, 970-71.) Due process, therefore, guarantees the right to an impartial tribunal. (*Collura*, 113 Ill. 2d at 369.) Still, "[a] mere possibility of prejudice is insufficient to show that a board, or any of its members, [is] biased." (*Collura*, 113 Ill. 2d at 370.) As our supreme court has observed, "[w]ithout a showing to the contrary, State administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55, quoting *United States v. Morgan* (1941), 313 U.S. 409, 421, 85 L. Ed. 1429, 1435, 61 S. Ct. 999, 1004, and *Withrow v. Larkin* (1975), 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468.

This principle—that administrators are capable of judging a particular controversy impartially—even applies to situations where the administrative board is exposed to tainted information, *provided* that a single and strongly worded admonition not to consider the information is given to the board. (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 442-44.) In *Diamond*, the administrative complaint contained extensive references to the results of two polygraph examinations of the officer subject to discharge. Finding that the inclusion of the results in the complaint without curative admonishments to the board tainted the administrative proceedings, the trial court reversed the officer's dismissal. The appellate court affirmed and directed that on remand the hearing be held before the same board *if* the board was admonished to ignore the results of the polygraph examinations. *Diamond*, 115 Ill. App. 3d at 446.

■ In the present case, the admonishment to the Commission not to consider the references to plaintiff's disciplinary record cured any prejudice plaintiff may have suffered when the information was originally exposed to the Commission. Mr. Mackey, counsel for the Commission, specifically admonished the Commission to disregard any references to plaintiff's disciplinary records. Mr. Mackey then asked each commissioner whether he or she could disregard the references. Each commissioner replied that he or she could. Given the facts before us, we conclude that the Commission complied with the dictates of *Diamond* and that the Commission afforded plaintiff a fair and impartial hearing.

Our conclusion is supported by plaintiff's failure to refer to any concrete evidence in the record which suggests that the Commission failed to consider the evidence impartially. Plaintiff makes the sweeping assertion that his right to an impartial hearing was "irreversibly poisoned" without providing specific examples of the Commission's alleged impartiality. However, as we noted above, the commissioners are presumed to be individuals capable of judging a particular controversy fairly on the basis of its own circumstances. (See *Scott*, 84 Ill. 2d at 55, quoting *Morgan*, 313 U.S. at 421, 85 L. Ed. at 1435, 61 S. Ct. at 1004, and *Withrow*, 421 U.S. at 55, 43 L. Ed. 2d at 728, 95 S. Ct. at 1468.) Thus, in the absence of specific examples of the Commission's alleged impartiality, and in light of the curative admonishment, we are compelled to conclude that the hearing complied with the requirements of due process. *Cf. Spencer v. Texas* (1967), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648 (due process not offended where recidivist statute required evidence of past crimes to be presented to the jury with the instruction to consider the past crimes only when determining sentence enhancement, not when determining guilt of the crime charged).

Plaintiff asserts that *Diamond* is distinguishable because the reference to plaintiff's disciplinary record in the present case is more prejudicial than the evidence of the plaintiff's polygraph examinations in *Diamond*. According to plaintiff, evidence of prior bad acts is more damaging than evidence of polygraph examination results because whereas the polygraph results in *Diamond* merely undermined the accused's credibility, the reference to plaintiff's disciplinary record undermined his claim of innocence.

We disagree. In *Diamond*, the unfavorable polygraph results undermined "the most crucial aspect of [the] case, [plaintiff's] credibility." (*Diamond*, 115 Ill. App. 3d at 444.) Nevertheless, a strongly worded admonishment would have cured any prejudice in that case. (115 Ill. App. 3d at 444.) Hence, even assuming, *arguendo*, that the

Commission's exposure to plaintiff's disciplinary record undermined the most crucial aspect of his case, the admonishment given to the Commission, like the admonishment to be given to the board on remand in *Diamond*, cured any prejudice.

More importantly, we read *Diamond* to hold that an admonition is sufficient to cure prejudice *even if* the tainted evidence is as equally prejudicial as or more prejudicial than exposure to unfavorable polygraph results. Thus, based on our reading, the court in *Diamond* would have reached the same conclusion whether the tainted evidence was unfavorable polygraph results or references to a disciplinary record. Accordingly, *Diamond* is directly applicable to this case.

Plaintiff also distinguishes *Diamond* on the ground that the statute at issue in *Diamond* did not authorize the appointment of a special hearing board, whereas the statute in the present case, the Civil Service in Cities Act (65 ILCS 5/10—1—1 *et seq.* (West 1994)), does allow for the appointment of a special hearing officer. Admittedly, the Civil Service in Cities Act allows for the appointment of a special hearing officer, whereas the statute at issue in *Diamond* did not. (See 65 ILCS 5/10—1—18(b) (West 1994)). Nevertheless, this distinction does not diminish *Diamond*'s applicability to the present case. *Diamond*'s holding was not based on the fact that the administrative agency lacked the authority to appoint a special hearing board. It is clear from *Diamond* that, even if a special board could have been appointed, any concerns regarding the impartiality of the board were best addressed either by a curative admonishment or by a reviewing court. (See *Diamond*, 115 Ill. App. 3d at 445 ("At any rate, the remedy for any unfairness which may result on rehearing is not the appointment of a special board, but an administrative review of that rehearing").) Thus, although the Commission in the present case could have appointed a special hearing officer, it was not required to do so, especially since the Commission adhered to the requirements set forth in *Diamond*.

## II

Plaintiff's second contention is that the Chief was barred from filing charges against plaintiff based upon the Cerone incident. Plaintiff maintains that by waiting three months to file charges relating to the Cerone incident and by failing to indicate any dissatisfaction with plaintiff's conduct during that period, the Chief waived his right to file charges.

Waiver is either an express or implied voluntary and intentional relinquishment of a known right. (*Wells v. Minor* (1991), 219 Ill. App. 3d 32, 45.) An implied waiver of a right may arise when conduct of

the person against whom waiver is asserted is inconsistent with an intent to enforce that right. (*Wells*, 219 Ill. App. 3d at 45.) However, a police department's failure to take timely disciplinary action does not bar the imposition of sanctions against a police officer. *Collins v. Board of Fire & Police Commissioners* (1980), 84 Ill. App. 3d 516, 522.

■ Here, there is no indication that the Chief intentionally relinquished his right to file charges against plaintiff relating to the Cerone incident. The only fact supporting the inference that the Chief intentionally relinquished his right is his failure to discipline plaintiff during the three-month period between the actual incident and the filing of charges. However, plaintiff cites no authority in support of this novel argument. In the absence of any authority and in light of the general rule that the failure to take timely disciplinary action does not bar the imposition of sanctions against an officer (see *Collins*, 84 Ill. App. 3d at 522), we conclude that the Chief's actions, or lack thereof, did not waive his right to file charges against plaintiff.

### III

This contention is not publishable pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

### IV

■ Plaintiff's fourth contention is that his failure to include his prior employment with IDOT on his application for employment with the police department was a *de minimis* violation and is unrelated to his duties as a police officer. A reviewing court's scope of review of an administrative agency's decision to discharge a public employee involves a two-step process. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105; *McCleary v. Board of Fire & Police Commissioners* (1993), 251 Ill. App. 3d 988, 998.) First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. (*Walsh*, 96 Ill. 2d at 105; *Caliendo v. Martin* (1993), 250 Ill. App. 3d 409, 415.) Second, the court must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. *Walsh*, 96 Ill. 2d at 105; *Caliendo*, 250 Ill. App. 3d at 415.

The first issue before this court, therefore, is whether the Commission's finding that plaintiff knowingly failed to disclose on his employment application that IDOT had discharged him is against the manifest weight of the evidence. (See *Walsh*, 96 Ill. 2d at 105.) As we explained earlier, factual findings made by an administrative agency are deemed *prima facie* true and correct. (See 735 ILCS 5/3—

110 (West 1994).) Our scope of review is therefore limited by the following standard:

> "In order for a court of review to find that an agency's decision is against the manifest weight of the evidence ***, the court must be able to conclude that 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous,' [citation] and that the opposite conclusion is clearly evident." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653.)

If there is anything in the record which fairly supports the agency's findings, the findings are not against the manifest weight of the evidence. (*Ross v. Civil Service Comm'n* (1993), 250 Ill. App. 3d 597, 601.) It is not the reviewing court's function to resolve factual inconsistencies or reweigh the evidence. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 427-28; *Trayling v. Board of Fire & Police Commissioners* (1995), 273 Ill. App. 3d 1, 9.) The reviewing court should sustain the agency's findings if the issue is merely one of conflicting testimony and credibility of witnesses. *O'Boyle*, 119 Ill. App. 3d at 653.

■ Based on our examination of the record and the narrow scope of review, we conclude that the Commission's findings are not against the manifest weight of the evidence. Contrary to plaintiff's claim, the record amply supports the Commission's finding that plaintiff knowingly concealed his prior employment relationship with IDOT. Plaintiff acknowledged that his discharge was related to the fuel pump incident, he admitted receiving the letter of discharge from IDOT, the incident occurred less than three years before he applied to the department, and a fair reading of questions 17 and 19 of the employment application supports the Commission's implicit finding that plaintiff knew he should have listed his employment and discharge by IDOT. Furthermore, plaintiff had a motive for concealing his prior employment relationship with IDOT from the department, namely, to prevent the department from discovering that IDOT discharged him for carelessly operating State property. Moreover, plaintiff's testimony as to why he did not list his prior employment relationship with IDOT was evasive and inconsistent. Although plaintiff offered various explanations of his conduct to the Commission, the Commission specifically found that his testimony was not credible. The Commission's finding that plaintiff knowingly failed to disclose his prior employment relationship with IDOT is not against the manifest weight of the evidence.

Next, we must determine whether the Commission's findings

provided a sufficient basis for the conclusion that cause existed for plaintiff's discharge. (See *Walsh*, 96 Ill. 2d at 105.) Initially, we note that unlike an administrative agency's findings of fact, determinations of cause for discharge are not *prima facie* true and correct and are subject to judicial review. (*McCleary*, 251 Ill. App. 3d at 998.) Nevertheless, an agency's finding of "cause" for discharge commands our respect, and we will overturn this finding only if it is arbitrary and unreasonable or unrelated to the requirements of the service. *Launius*, 151 Ill. 2d at 435; *Walsh*, 96 Ill. 2d at 105.

Our supreme court has defined "cause" for discharge as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 551, quoting *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441; see also *Walsh*, 96 Ill. 2d at 105.) Cause for discharge has been found where a police officer lies to his employer. (*E.g., Slayton v. Board of Fire & Police Commissioners* (1981), 102 Ill. App. 3d 335; *Kupkowski v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 316.) In addition, lying on an employment application renders an applicant unfit to serve as a police officer. (See *Village of Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 224.) The rationale behind *Slayton, Kupkowski,* and *Oak Lawn* is uncomplicated: as the guardians of our laws, police officers are expected to act with integrity, honesty, and trustworthiness. As one court observed:

> "[A] law enforcement officer is in a peculiar and unusual position of public trust and responsibility, and by virtue thereof, the public body has an important interest in expecting the officer to give frank and honest replies to questions relevant to his fitness to hold public office. *** The high obligation owed by a policeman to his employer and his peculiar position in our society certainly must be taken into account in considering the nature and effect of disciplinary proceedings instituted by the employer." *Grabinger v. Conlisk* (N.D. Ill. 1970), 320 F. Supp. 1213, 1219-20, *aff'd* (7th Cir. 1972), 455 F.2d 490.

See also *Oak Lawn*, 133 Ill. App. 3d at 224 ("Trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer").

In this case, the Commission discharged plaintiff because his failure to report his employment and discharge by IDOT "demonstrated a substantial shortcoming which renders continuance in employment

in someway detrimental to the discipline and efficiency of the Police Department of the Village of Gurnee and something which the law and sound public opinion recognize as cause for the officer no longer occupying his position." Plaintiff, relying on *Collins v. Board of Fire & Police Commissioners* (1980), 84 Ill. App. 3d 516, maintains that even his knowing failure to report his prior employment with IDOT on his application does not constitute cause for discharge.

■ We disagree. Plaintiff deliberately omitted material information from his employment application. This information is precisely the type of information a police department is entitled to discover before offering an applicant a position as a police officer. By deliberately omitting this information from his application, plaintiff acted in an irresponsible and dishonest manner. As such, we cannot conclude that the Commission's finding of cause for discharge is arbitrary or unreasonable or unrelated to the requirements of serving as a police officer.

## V

Plaintiff's fifth and final contention is that the admission into evidence of his disciplinary record violated the Personnel Record Review Act (820 ILCS 40/0.01 *et seq.* (West 1994)). In the aggravation and mitigation phase of the hearing, the Commission admitted into evidence a letter from Commander Mors to the Chief. The letter contained Commander Mors' summary of plaintiff's disciplinary history as documented in both plaintiff's "personnel file" and "incident file." An officer's personnel file contains only instances of "formal discipline," *i.e.*, letters of reprimand or suspension. An incident file contains all other instances of discipline, *i.e.*, verbal reprimands or written warnings issued by a sergeant. According to plaintiff, when his counsel reviewed the personnel file on March 7, 1994, 17 of the 21 disciplinary incidents contained in Commander Mors' letter were not in the personnel file. These 17 incidents were apparently contained in the incident file. Because the 17 incidents were not included in the personnel file, plaintiff urges us to conclude that the Commission considered them in violation of section 4 of the Personnel Record Review Act (820 ILCS 40/0.01 *et seq.* (West 1994)).

Section 4 of the Personnel Record Review Act provides:

"Personnel record information which was not included in the *personnel record* but should have been as required by this Act shall not be used by an employer in a judicial or quasi-judicial proceeding. However, personnel record information which, in the opinion of the judge in a judicial proceeding or the hearing officer in a quasi-judicial proceeding, was not intentionally excluded

from the personnel record may be used by the employer in the proceeding if the employee agrees or has been given a reasonable time to review the information." (Emphasis added.) (820 ILCS 40/4 (West 1994).)

Plaintiff apparently interprets section 4 as requiring all personnel record information to be included *within a single personnel file*. However, plaintiff fails to appreciate the difference between the personnel record and its component parts in the present case, the personnel file and the incident file. Section 4 requires all personnel record information to be contained in *the personnel record* if an employer intends to use the information in a judicial or quasi-judicial proceeding. (820 ILCS 40/4 (West 1994).) Section 4 does not require that all personnel record information be kept in one file—it merely requires the employer to make all personnel records available to the employee.

■ In the present case, the department made plaintiff's personnel records available to plaintiff and his counsel. As plaintiff apparently concedes, the department gave plaintiff his entire *personnel record* during the course of discovery in November 1993. This personnel record included plaintiff's personnel file and incident file. Thus, it is irrelevant if the *personnel file* plaintiff's counsel reviewed on March 7, 1994, did not contain those incidents contained in the incident file, since the department previously gave plaintiff his *personnel record*, which included the incident file. Accordingly, the Commission properly admitted into evidence plaintiff's disciplinary history as contained in Commander Mors' letter.

Moreover, even if the personnel file should have contained plaintiff's entire disciplinary history when plaintiff's counsel reviewed it on March 7, 1994, the Commission nonetheless properly admitted into evidence Commander Mors' letter. Section 4 provides that an employer may use an employee's personnel record information if (1) the employer did not intentionally exclude it from the personnel record; and (2) the employee agrees or has been given a reasonable period of time to review the information. (820 ILCS 40/4 (West 1994).) The Commission found that the department did not intentionally exclude the information from the personnel file and that plaintiff had a reasonable period of time to review the information. Because the record supports these findings, we conclude that the department complied with the requirements of section 4 of the Personnel Record Review Act.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.