THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Plaintiff-Appellant, v. THE STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 86—2564

Opinion filed August 19, 1987.—Rehearing denied September 30, 1987.

Patricia J. Whitten, of Chicago (Percival Harmon and Robert A. Wilson, of counsel), for appellant.

Poltrock & Giampietro, of Chicago (Kathrin A. Koenig, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, board of education of the city of Chicago, discharged

defendant, Catherine Parkman, from her position as a tenured school nurse for allowing students to receive inoculations without parental consent, conduct which plaintiff found to be irremediable. Defendant Illinois State Board of Education appointed a hearing officer, who found the conduct was remediable, reversed the discharge and directed plaintiff to reinstate Parkman with full back pay. On administrative review, the trial court confirmed the State Board decision. Plaintiff appeals, contending that the decision is contrary to law and against the manifest weight of the evidence.

Parkman began working for plaintiff as a school nurse in 1975 and achieved tenured status in 1979. On May 18, 1983, she was coordinating an inoculation program at a federally funded pre-school, the Farren Child-Parent Center in Chicago, in cooperation with the Illinois Department of Public Health. On that day, 43 four- and five-year-old children were inoculated. Forty of the consent forms were signed by Parkman in the parents' names and initialed by Parkman. After several parents complained that their children had been inoculated without their permission and a preliminary investigation was made, plaintiff relieved Parkman of her assignment to any child-parent pre-school centers and reassigned her to office duties. Seven months later, in January 1984, plaintiff adopted a resolution suspending Parkman immediately, without pay, pending a hearing. Plaintiff referred the matter to the State Board for the appointment of a hearing officer. The charge for dismissal stated that Parkman was guilty of "conduct unbecoming a school nurse," that Parkman had "allowed students to receive inoculations without the written signature of the parents of the students," and that plaintiff found the conduct to be irremediable.

At Parkman's request, plaintiff filed a bill of particulars detailing seven alleged acts of misconduct upon which plaintiff based its charge for dismissal: (1) Parkman signed numerous requests for the inoculation of minor children without written authorization of the parents of those children; (2) Parkman signed numerous requests for inoculations of minor children without the written or oral authorization of the parents of those children; (3) Parkman falsely stated that Dr. Oliver Crawford had approved inoculations for Seena Paul; (4) Parkman erroneously stated to Olestine Jude that, if Olestine's child did not receive inoculations, the child would be excluded from school; (5) Parkman acted contrary to State of Illinois Department of Public Health Guidelines of Immunization and the Procedures promulgated by plaintiff by her actions as described in paragraphs 1 and 2; (6) Parkman submitted numerous authorizations stating incorrect addresses of students; and (7) Parkman failed to give the children who

received shots the parent notification form to take home.

On December 6, 1985, the hearing officer issued a decision which found that charge 1 was substantiated by plaintiff only as to three children, Tiffany Hall, Seena Paul, and Thomas Tweedle. As to the other 37 children, plaintiff failed to prove that in signing the original consent forms Parkman acted without written or oral authorization of the parents. Charge 5 was proved only to the extent that Parkman failed to notify her section coordinator, Harryetta Matthews, that the inoculation program was scheduled, and was held on May 18, 1983. Charge 6 was proved to the extent that Parkman recorded the approximate address of the school rather than home addresses; however, the act was only a technical violation of an implied requirement and had no harmful consequences. All other charges and allegations were dismissed either because they overlapped with other charges or were not substantiated by plaintiff. The hearing officer then found that the substantiated charges involved remediable conduct, thus requiring plaintiff to issue the statutory warning to Parkman. Because plaintiff had not issued such a notice, it was without jurisdiction to suspend her. The hearing officer ordered Parkman's reinstatement within 10 days and full back pay and benefits from January 26, 1984, the date of her suspension.

On August 19, 1986, the trial court found that the decision of the State Board finding Parkman's conduct to be remediable and reinstating her was not contrary to law and not against the manifest weight of the evidence. This court subsequently entered a stay of the trial court order awarding back pay, but denied plaintiff's request for a stay of the trial court order directing reinstatement of Parkman.

■■■ The findings and conclusions of an administrative agency on questions of fact are deemed to be *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Those findings of fact will not be disturbed unless they are contrary to the manifest weight of the evidence. (*Last v. Board of Education* (1962), 37 Ill. App. 2d 159, 185 N.E.2d 282.) Findings are against the manifest weight of the evidence only if conclusions opposite to those reached by the agency are clearly evidenced. (*Board of Trustees of Community College District No. 501 v. Illinois Community College Board* (1976), 43 Ill. App. 3d 956, 357 N.E.2d 1222.) A court of review will not reweigh the evidence or substitute its judgment for that of the hearing officer where substantial evidence supports the hearing officer's decision. *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.

■■ Under section 34—85 of the School Code, no tenured teacher shall be removed except for cause. (Ill. Rev. Stat. 1985, ch. 122, par.

34—85.) Written warnings must be given to a tenured teacher before dismissal if the causes assigned for dismissal are considered remediable. (Ill. Rev. Stat. 1985, ch. 122, par. 34—85.) Where no warning is given, the board's evidence must prove that the teacher's conduct is irremediable. When the board fails to meet its evidentiary burden of proving that the teacher's conduct is irremediable, and when no warning has been given, the board is deprived of jurisdiction to terminate the teacher. *McBroom v. Board of Education* (1986), 144 Ill. App. 3d 463, 494 N.E.2d 1191; *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 430 N.E.2d 310.

The hearing officer correctly found that irremediability is the primary issue of fact in this case. Plaintiff initially contends, however, that the hearing officer's decision is based on erroneous findings of fact. Before addressing the irremediability issue, therefore, we review the preliminary findings of fact made by the hearing officer.

In a written decision, the hearing officer presented a thorough and well-reasoned analysis of the lengthy testimony as it related to the issue of whether plaintiff had proved each of the seven charges against Parkman. We hold that the hearing officer's findings received substantial support from the evidence.

As to the first and primary charge regarding failure to obtain written parental permission, Parkman admits she signed the 40 consent forms after receiving either verbal parental consent over the telephone or written parental consent on a list she had circulated. The hearing officer found "massive evidence" that Parkman obtained consent "in an informal manner or on the official consent form from the large majority of the parents."

Ruby Lamon, a member of the Board of Health inoculation team, testified that her team arrived at Farren on May 18, 1983, to give inoculations, and Parkman showed Lamon a slip of paper "giving the parents' consent that the parents had signed." Lamon informed Parkman that the signatures must be on official forms. Because Parkman had none of these forms, Lamon obtained blank forms from her car and gave them to Parkman. Later that day, Lamon was given a stack of forms, each signed with a parent's name followed by a slash and the initials "C.P." Lamon did not pay much attention to the initials because she would just "make sure it is filled out correctly and see the signature on the bottom, and we give the shot." Parkman testified she signed the forms in the presence of the health team. The hearing officer found that the "failure of the health team to protest [Parkman's] act suggests that this has been done before and was not unusual." Several parents and employees testified regarding their

joint efforts on May 18 to help Parkman telephone all of the parents to get verbal approval. The hearing officer also noted that the guidelines and manuals relied upon by plaintiff do not require signed permission on an official form.

The hearing officer properly gave weight to Parkman's argument that she was presented with a crisis situation on May 18. The official consent forms were not delivered to her prior to that date, and thus she could not have mailed them to the parents. Moreover, the inoculation program was scheduled for May 20, and yet the health team arrived on May 18 without any prior notice to Parkman. The unexpected change in schedule was confirmed by several witnesses for both parties.

The evidence did show, however, that as to three families, the Halls, Pauls, and Tweedles, no written or verbal authorization was given. In the case of the other 37 families, the hearing officer concluded that the conduct was "only a technical violation of the practice of requiring the obtainment of parental consent on an official form."

Notwithstanding this evidence, plaintiff maintains that "even if such consents were given, the evidence failed to establish that they met the requirement of 'informed consent.'" Plaintiff misconstrues the nature of this case. We are concerned with the discharge of a tenured employee by an administrative body, not with a medical malpractice action.

The second charge is identical to the first except that "or oral" is added. We share the hearing officer's confusion as to the rationale behind firing Parkman for obtaining only oral consents and then charging her with failure to obtain written "or oral" consents. The hearing officer properly dismissed this charge.

The third charge, that Parkman falsely stated Dr. Crawford approved inoculations for Seena Paul, also was not proved by plaintiff. Plaintiff maintains that Seena's father testified that Parkman told him "that she called Dr. Crawford on that Wednesday morning and he stated" that Seena needed the shot. Plaintiff argues that Parkman, therefore, "knowingly made false statements to the Pauls. Statements for which she now stands incriminated on the record." The record, however, shows the contrary. Paul testified that Parkman "simply stated that she called Dr. Crawford's office that morning" and was told by office personnel that Seena had not yet received the required inoculation. This evidence also supports a finding that Parkman did not merely sign 40 consent forms. She first researched each health folder for an immunization history and attempted to verify the need for inoculations from the child's parent or doctor.

Charge 4 inexplicably accuses Parkman of "erroneously" telling a parent her child would be excluded from the school if she was not inoculated. Plaintiff's own official communications to parents indicated that children would be excluded if not inoculated by May 20, the date of the scheduled inoculation program at Farren.

Charge 5 accuses Parkman of acting contrary to published Department of Public Health Guidelines and established procedures of plaintiff. The hearing officer properly found the relevant publications were "fragmented, of temporary nature and singularly void of a structured and unified policy directive in the area of immunization" and that many were "hardly legible" or "obsolete." Moreover, they had never been accepted by plaintiff as its official policy. In addition, the nurse who trained Parkman in 1975, Jane Faust, testified that during the inoculation program observed by Parkman in training, several parents were telephoned for verbal consent, and then Faust would sign the parent's name followed by her own initials. Moreover, Parkman observed in training that Faust was reprimanded by her superiors for refusing to inoculate a busload of children from other schools who had no health records or parental consents.

Plaintiff maintains, however, that Parkman failed to notify her superiors of the scheduled inoculation program, as required by Board procedure. Dephane Rose, plaintiff's nursing director, and Matthews, the nursing coordinator of Parkman's region, denied authorizing the Farren program. Parkman, however, testified that at the regular inservice meeting preceding the incident, she asked Matthews about having an inoculation program at Farren. Parkman was told to be quiet and not ask any questions. Faust testified that during a regular meeting in fall 1983, Parkman asked for an inoculation program, and Matthews' "usual response" was to tell Parkman they would discuss it later. Parkman later called Matthews twice but could not reach her. After a person at the Board of Health promised Parkman an inoculation team and that he would notify Matthews, Parkman made no further effort to contact her.

We conclude that, based upon this evidence, the hearing officer was entitled to find that Parkman violated the established procedure requiring notification to the nurse's coordinator, but that the infraction was mitigated by the circumstances. The Board of Health was supposed to notify the coordinator, and failed to do so. In addition, "it is not condoned, but understood that, under the above circumstances, [Parkman] tried to avoid further contact with Matthews."

The sixth charge, that Parkman inserted incorrect addresses of students on the consent forms, was proved but had no harmful conse-

quences. Parkman wrote the approximate school address of 5100 South State Street on all 40 consent forms. The hearing officer found that, if the Board of Health needed to contact parents about a "bad batch" of vaccine, it could immediately identify the school involved and contact parents by telephone numbers and addresses obtained from the school.

The seventh charge, that Parkman failed to give the children parent notification forms to take home, was not proved by plaintiff. The children did receive the forms. The dispute centers on whether plaintiff should have personally given them the forms. While Rose testified that it is the duty of the school nurses to hand out the forms, Lamon testified that it is the duty of the health inoculation team to give the children the notification, which is a form printed by the Board of Health. Lamon and several parents testified about pinning the slips to the children's clothing or placing them in the children's pockets. The hearing officer was entitled to accept Lamon's testimony. The findings of the hearing officer as to the seven charges are not against the manifest weight of the evidence.

As to the central issue in this case, plaintiff contends that Parkman's conduct was irremediable. We find, based upon facts elicited in the full evidentiary hearing, that the hearing officer was entitled to find that the conduct was remediable. Thus, the failure to give notice deprived plaintiff of jurisdiction to suspend Parkman.

■■■ The two-part test for determining whether conduct is irremediable is whether damage has been done to the students, faculty or the school, and whether the conduct resulting in the damage could have been corrected had the teacher's superiors warned her. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398; *McBroom v. Board of Education* (1986), 102 Ill. App. 3d 463, 494 N.E.2d 1191; *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 430 N.E.2d 310.) It is not enough, however, to show that some damage occurred. The damage must be significant before the conduct causing the damage can be declared irremediable. (*Board of Education v. State Board of Education* (1983), 99 Ill. 2d 111, 457 N.E.2d 435.) On administrative review, this court must determine whether the procedures required by law were followed and, if so, whether the decision of the fact finder was against the manifest weight of the evidence. (*Board of Education v. Illinois State Board of Education* (1980), 82 Ill. App. 3d 820, 403 N.E.2d 277.) The reviewing court may not substitute its judgment for that of the hearing officer. *Combs v. Board of Education* (1986), 147 Ill. App. 3d 1092, 498 N.E.2d 806.

Plaintiff contends that Parkman's conduct caused damage to the students because they suffered the typical physical reactions to the inoculations, *e.g.*, slight fevers or soreness in the arm. Plaintiff points to evidence that several children did not feel well and were given Tylenol on the day following the inoculations. Plaintiff also sets forth the dangers of inoculation.

The three children inoculated without any consent unnecessarily suffered the usual physical reactions to the inoculation. However, we agree with the hearing officer that the damage was not severe or permanent enough to warrant Parkman's immediate suspension without a previous written warning. As to the other 37 children, the reactions to the inoculation would have occurred even if their parents had given written consent, because all of the children needed the vaccines.

■ In regard to whether the incorrect addresses on the forms harmed the three children inoculated without permission, the hearing officer noted that the Pauls and Halls had submitted incorrect addresses to the school in order to enroll their children at Farren. Moreover, plaintiff admits the incorrect addresses were only "record keeping and/or preparation errors." Ministerial errors are remedial conduct as a matter of law. *Wells v. Board of Education* (1967), 85 Ill. App. 2d 312, 230 N.E.2d 9.

Plaintiff also argues that the giving of inoculations without consent was "orchestrated by Parkman," thus making Parkman "guilty of forty incidents of criminal battery and forty incidents of civil tort." Parkman is not charged with these offenses, and the related legal principles are not helpful or relevant to our analysis here.

Plaintiff contends further that Parkman's conduct caused damage to Farren. Plaintiff argues that the school was "detrimentally impacted and damaged" because the incident caused a "commotion, disruption," and "uproar" of the normal school atmosphere. Much of the disruption, however, was a result of parents showing their support of Parkman, by demanding her return to Farren. The testimony which plaintiff relies upon does not support its position.

For example, plaintiff cites the testimony of Delores Robinson, a parent who "described the aftermath of the inoculations at Farren" and Louise Searcy, a parent who testified "everything was in an uproar." Robinson testified, however, that the parents "were not upset at the program. *** No one was upset at this school or against [the] program or anything like that, no." The parents supporting Parkman were "going to picket. *** We did not want Ms. Parkman to lose her job because of this. So we were going to speak out on her behalf." Similarly, Searcy testified that parents were upset because they did

not "feel she had done any wrong." Robinson also testified that when a group of parents tried to talk to Matthews, she raised her voice and yelled at them, saying she did not want to hear any more about the matter. Matthews also yelled at Parkman, pointing a finger at her, in the presence of the parents. At one point, Farren's head teacher told parents speaking to her on behalf of Parkman to either leave or their children would be expelled.

Plaintiff also asserts, as evidence of damage to the school, that the record shows "[o]ne parent withdrew her child from the Farren Child Parent Center as a result of the inoculation incident." The page cited in the record shows that Searcy was asked whether the same people still participated in the pre-school program after the inoculation program took place. Searcy answered, "Yes, the same people still participating." Searcy was again asked "whether or not any children withdrew from the program as a result of this incident." Searcy responded, "One withdrew, other than one that was kicked out" before Parkman left because they did not have inoculations. Searcy was again asked "whether or not there was a decrease in the enrollment in the program of children after this incident," and she responded, "No. There is still a long [waiting] list." The testimony is somewhat confusing, but it does not show that a parent withdrew her child as a result of the incident. In fact, the three children who received inoculations without permission all remained in the school.

Based on this evidence, the hearing officer could properly find that "[i]f anything, the commotion and uproar was due to the inept handling of the incident by the administration. The behavior of Ms. Matthews in front of the parents contributed at least as much to the 'disruption' as [Parkman's] handling of the inoculation program."

In support of its argument that the nursing program was harmed by Parkman's conduct, plaintiff relies upon the testimony of Rose. She testified that Parkman's conduct had a damaging and negative impact on the nursing program and on the school administration because it cast the program "in an unfavorable light with the administrator who became familiar with the incident." The record does not support this assertion. Dr. J. V. Vitaccio, plaintiff's former medical director, testified that the incident may have had a positive effect on the nurses because they would be more careful in following procedures. The hearing officer was entitled to find that no actual damage was suffered by the nursing staff.

In regard to damage suffered by the school system, Raymond Principe, the director of the Bureau of Teacher Personnel, testified he believed "that the school community would have been devastated by

such an act." He explained: "Well, I think there is an obvious question of people in positions of trust who are not acting as though they are trustworthy." The hearing officer was understandably "perplexed" by Principe's remarks in light of the fact that his testimony, 18 months following the incident, failed to detail any actual damage to the school system.

We find the hearing officer was entitled to conclude that the students, school and faculty were not severely damaged by Parkman's conduct.

■■ The second part of the *Gilliland* test requires us to ask whether the conduct resulting in damage could have been corrected had the superiors warned the employee in writing. (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.) Plaintiff asserts that it "need not warn a teacher nurse to cease engaging in unlawful or improper conduct" and that the "case law does not require a futile warning." Plaintiff reasons that, "A circumstance of failure to maintain discipline or failure to submit lesson plans might be the appropriate subject of a warning notice but not of deliberate, rash, improper and arguably illegal conduct." We disagree with plaintiff's characterization of Parkman's conduct. As we have stated, the hearing officer was entitled to find that no severe damage resulted from Parkman's conduct except for the unnecessary but temporary discomfort suffered by the three children inoculated without consent. That damage, however, was not severe enough to warrant suspension without notice.

Plaintiff maintains there was a "pyramid" effect of the seven charges it makes. Individual acts which are separately remediable may be irremediable when considered in their totality. The acts must have continued over a long period of time, and the court may also look at whether the cause itself is irremediable, and whether the employee showed a cooperative and willing attitude to correct the unsatisfactory conduct. *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.

Parkman's employment record was extremely favorable. From 1975 to 1980, she received superior to excellent ratings, and she never received an unsatisfactory rating. Moreover, there was no accumulation of infractions here. The single incident was limited to one day in eight years of employment. In addition, Parkman always demonstrated a willingness to correct any unsatisfactory conduct. Parkman told the parents she was sorry if she had done anything wrong. Rose admitted that Parkman was cooperative during the investigation and concerned about the incident. In her report to Rose, Parkman included recommendations as to how similar incidents could

be avoided.

The hearing officer also properly considered mitigating circumstances, including the fact that plaintiff had no specific rule telling nurses they would be fired if a written parental consent was not obtained. In addition, the State made it mandatory to expel children without inoculations, and threatened to penalize the school system financially if 90% of the pupils were not immunized. Furthermore, Parkman had a heavy work load. She serviced all child-parent centers in the central section, and in previous years several nurses had shared that job.

Additional mitigating circumstances included plaintiff's computer office initially providing incorrect information as to Farren's inoculation level. On May 4, 1983, it showed Farren was in compliance, but two days later showed 70% of the children at Farren were not in compliance. Moreover, the inoculation team arrived two days early without notice, and the Board of Health failed to deliver the consent forms before May 18.

■■ We hold that there was overwhelming evidence to support the hearing officer's finding that the causes charged and proved against Parkman were remediable in nature since plaintiff failed to establish that Parkman's conduct severely damaged the students, faculty or school, or was such that it could not have been corrected if a warning had been given. As a result, the failure of plaintiff to provide a statutory warning to Parkman deprived it of jurisdiction to discharge her. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 324, 388 N.E.2d 398; *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 367 N.E.2d 1337; *Morris v. Board of Education* (1981), 96 Ill. App. 3d 405, 421 N.E.2d 387.) The order previously entered by this court staying the trial court order awarding back pay is hereby vacated.

For the foregoing reasons, the judgment of the circuit court of Cook County upholding the decision of the Illinois State Board of Education is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.