2016 IL App (1st) 141388

SECOND DIVISION
May 3, 2016

No. 1-14-1388

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| VICTOR JACKSON, | ) | Appeal from the Circuit Court, |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | No. 12 CH 2354 |
| THE BOARD OF EDUCATION OF THE CITY | ) | |
| OF CHICAGO; DAVIS VITALE, President, | ) | |
| JESSE RUIZ, Vice President, HENRY BIENEN; | ) | |
| CARLOS AZCOITIA, MAHILIA HINES, | ) | |
| ANDREA ZOPP, and DEBORAH QUAZZO, | ) | |
| Members; BARBARA BYRD-BENNETT, | ) | |
| in Her Official Capacity as Chief Executive | ) | Honorable Thomas R. Allen |
| Officer, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| (Ann Kenis, Hearing Officer; The Illinois State | ) | |
| Board of Education; Gery Chico in His Official | ) | |
| Capacity as Board Chair; and Christopher Koch | ) | |
| In His Official Capacity as State | ) | |
| Superintendent, | ) | |
| | ) | |
| Defendants). | ) | |

_____

JUSTICE SIMON delivered the judgment of the court, with opinion
Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Board of Education of the City of Chicago (Board) terminated petitioner Victor Jackson's employment as a tenured teacher for violation of Board's rules and policy finding that he failed to immediately report that his principal asked him to cheat on the Illinois Standard Achievement Test (ISAT) and for falsifying his employment application by omitting his previous employment and discharge with the Chicago police department (CPD). After a hearing, the hearing officer found the Board did not prove by a preponderance of the evidence any of the charges against Jackson and recommended reinstatement. The Board accepted the hearing officer's findings of fact and the conclusion that Jackson did not participate in the cheating, but terminated Jackson's employment for failing to report the test irregularities and for falsifying his employment application. Following Jackson's complaint for administrative review, the circuit court held that the Board's decision was against the manifest weight of the evidence, reversed the Board's order and reinstated Jackson with back pay and benefits. This appeal followed.

¶ 2                                     BACKGROUND

¶ 3    Hearing officer Ann Kenis conducted a five-day hearing which produced the following relevant evidence for purposes of this appeal. Jackson was a tenured teacher employed by the Board since 2002. During his teaching career, he worked as a third grade teacher at Jackie Robinson Elementary School (Robinson), a preKindergarten through third grade school, for approximately four years. The teacher evaluation reviews in the record indicated that Jackson had generally been rated as an excellent teacher.

¶ 4    The ISAT is a state-mandated assessment required for all public schools in the State of Illinois. The only grade at Robinson that takes the ISAT is the third grade. Robinson had been on probation and the removal from probation was partially dependent on its third graders'

performance on the ISAT.   Jacqueline Wilson Thomas, the principal at Robinson, arranged for various activities prior to ISAT testing in March 2010 to motivate students and to give them the opportunity to be tutored in preparation for the test.  A tutoring program was offered for third grade students on Saturdays, as well as before school for several days a week.  Jackson was one of the teachers who participated in the tutoring program.

¶ 5     During the 2009-10 school year, there were two third grade classrooms at Robinson. Claire Miller, a temporary non tenured teacher, and Jackson were the two third grade teachers at Robinson when the ISAT test was administered in March 2010.  Miller testified that on March 2, 2010, her students began taking the math portion of the ISAT at approximately 9:30 a.m. The second math portion of the ISAT was going to be administered the following day.  After the test was concluded that day, she was summoned to principal Thomas' office.  Jackson and Kristie Banks, the proctor in Miller's classroom for the math portion of the ISAT, were also summoned.

¶ 6     Miller testified that when she arrived in the principal's office, Jackson, and Jack Silver, the ISAT coordinator at Robinson, were already there.  Miller testified that Silver told her that he spoke with someone downtown and they could break the seal, look and teach from the test booklet.  Silver gave Miller a booklet and Miller told him that she did not feel comfortable teaching from the text booklet based on what she knew about test security.  Miller testified that Jackson was 10 to 15 feet away and he could not hear what she and Silver said.  Miller did not see Silver give Jackson a test booklet.  She left the office with the test booklet and went back to her classroom.  Later, Jackson came in and asked if she was going to open the test booklet. Miller told him that she did not feel comfortable doing that.  Jackson said he was not going to either.

¶ 7    Miller testified that, a few minutes later, Jackson and principal Thomas came in her classroom. Thomas asked Miller and Jackson if they were going to teach the material that was going to be on the test the next day. Miller testified that she said no and Jackson said "yeah, I can do it." Thomas told Jackson and Miller to switch classrooms so that Jackson could teach Miller's students while Miller went to Jackson's classroom and taught Jackson's students.

¶ 8    After they switched classrooms, Miller admitted that she never asked Jackson what he taught her students. Miller asked Kristi Banks, another teacher, if teachers could look through the ISAT booklet to see what was going to be on the test the next day. At Banks suggestions, Miller testified, she put the sealed booklet Silver had given her into a folder, took it back to the main office, and placed it in the vault.

¶ 9    On March 3, 2010, the testing on the math portion of the ISAT resumed. Miller supervised the testing of the third grade students and Banks was the proctor. As Miller and Banks walked around the classroom, they noticed that approximately 10 to 15 students had notes. They threw all of them in the garbage can. The students' notes had letters which, according to Miller, demonstrated the "flip, turn, slide" concept which is on the ISAT test. There were also shapes and words written on some of the notes. Miller acknowledged that these were concepts she had previously taught her class and that ISAT sample problems included examples of these concepts. At the end of the school day, they retrieved four notes from the garbage "to have as evidence." From March 2 to March 24, Miller and Banks each kept two of the notes because "their plan was to protect themselves if it was reported." Miller testified that she reported the alleged test cheating at the end of March 2010 when the Board's investigator contacted her.

¶ 10    Kristie Banks testified that during the 2009-10 school year she was a teacher at Robinson. On March 3, 2010, during ISAT testing, Miller pulled her aside and showed her a piece of folded

paper and said that she just took it from a student. Banks told her to throw it in the garbage can. They threw out 12 to 20 notes. Banks testified that, on the same day, she told Debi Thomas, another teacher, what occurred. Banks then stated that the papers confiscated from the students were the "exact" problems from the test and that she believed the students were given the answers by Jackson. Banks stated that she knew that the papers had the exact questions that were on the test because she looked at the test booklet.

¶ 11    Banks testified that, after throwing the notes away, she, Miller, and another teacher retrieved the notes from the garbage around 3 p.m. She did not know whose handwriting any of the notes contained. Banks testified that she never saw Jackson look at an ISAT booklet during the exam, break the seal of a test booklet or look at it. Banks testified that she was not present in the room where Jackson taught the students, had never seen Jackson teach from the test, nor had she ever seen Jackson give any student any information about the ISAT.

¶ 12    Banks testified that she reported alleged test cheating on March 16, 2010, by sending a letter to and meeting with area officer Judith Coates on that date. Banks also made an anonymous call to Illinois State Board of Education (ISBE) to find out what happens to individuals if there was test cheating. During the call, she portrayed herself as someone else and did not give the name of Robinson School.

¶ 13    Debi Thomas testified at the hearing that she worked closely with Jackson in her capacity as the literacy coach and stated that he is a great teacher. She shared an office with Banks. Banks had the notes that she took from the students. Banks told her she had 32 sheets and threw all in the garbage, but grabbed some upon exiting. In April 2010, Banks showed her an e-mail from Judith Coates thanking Banks for her cooperation in the cheating investigation and stating that Miller and Banks would be taken care of.

¶ 14     Rachel Jachino, a principal consultant for the Division of Student Assessment for the ISBE, testified that her duties include advising in the development of math assessment for the ISAT test.  In preparation for her testimony, she reviewed the math portion of the 2010 ISAT test.  According to Jachino, it contained 75 questions, of which 2 or 3 concerned the concepts of "flips, slides and turns."  These are geometric properties which show how transformations affect shapes.  Jachino testified that the ISBE's website contains these concepts and teachers are allowed and expected to teach them before ISAT testing.  Jachino was shown the four students' notes that were offered by the Board as those confiscated during ISAT testing and found in the garbage can in Miller's classroom on March 3, 2010.   Jachino testified that she was not sure what the notes represented, possibly geometry.  She pointed out that some of the notes were incorrect.  Jachino stated that the students' notes did not contain any specific answers or questions on the 2010 ISAT math exam.

¶ 15     Linda Abdul, an assessment specialist for the Board, testified teachers are not to receive ISAT booklets before the test.  A teacher would violate test security if he or she were to model test questions for students.  Abdul testified that any employee who knows information about testing improprieties with the ISAT is bound to report the improprieties to her or ISBE.

¶ 16     Jackson testified that on March 20, 2010, he was summoned to the principal's office.  When he arrived, Miller, principal Thomas, and Jack Silver were all there. Silver said that he spoke with someone from the downtown central office who told him that they could use the ISAT test booklets.  Jackson asked Silver what that person's name was, but Silver could not remember.  Silver asked Jackson and Miller if they felt comfortable breaking the seal and teaching the lessons to the children.  Jackson responded that he was not.  Miller said "no" as well.  Silver told them to think about it.  Jackson testified he felt insulted because he worked hard

with the children and that they did not need to cheat. The principal directed Miller and Jackson to switch classrooms. No ISAT test book was present. Jackson prepared the children for the ISAT. He testified that he used ISAT coach books ordered by principal Thomas or the former principal. Jackson testified that he did not have an ISAT test booklet at any time in his possession.

¶ 17 Jackson stated that had he been forced to open an ISAT booklet, he would have reported it. Jackson testified that when the matter was investigated, on April 22, 2010, he reported the conversation with principal Thomas and Jack Silver, but when that conversation took place, he did not think he was being asked to cheat. He stated that he never cheated or broke the seal of an ISAT test.

¶ 18 Jackson testified that he worked more than 10 jobs before seeking employment with Chicago Public Schools (CPS) and he thought to include in his application those jobs experiences that were relevant to teaching. Jackson acknowledged that he worked as a police officer for CPD from May 2001 until May 2002, when his probationary employment was terminated as a result of an investigation for allegations that he mistreated an arrestee and for being dishonest during the investigation. Jackson testified that he did not list other jobs besides the police department on the application and that he never kept his employment with CPD a secret. Jackson listed two CPS administrators as references on his employment application, both of whom had knowledge of his position and termination at the CPD.

¶ 19 Andrea Kerr testified that she worked for CPS for 37 years prior to her retirement. She was a director of curriculum and instruction at CPS and also served as executive administrator for the chief education officer. Kerr testified that her daughter dated Jackson in New York. Kerr met him in 1995 when he and her daughter relocated in Chicago. Jackson worked for her as an

intern when he was in college and was a good employee. Kerr was listed as a reference on Jackson's CPS job application and she knew about Jackson's employment and subsequent termination with CPD because Jackson told her. Kerr testified that in 2003, CPS did not require a job applicant to disclose every prior employer and CPS employees working for her were not disciplined or terminated for failing to list every prior employer on their job application.

¶ 20    Karen Kerr, Andrea Kerr's sister-in-law, testified that she met Jackson when he was dating her niece. Karen Kerr was previously a special education teacher, an assistant principal, and the principal at Bond Elementary School, retiring in 2004. While Karen Kerr was the principal at Bond, Jackson interviewed with her for a teaching position. Jackson told her that he had previously worked at CPD and he explained the circumstances of his termination from CPD. Karen testified that his previous CPD experience was not a problem and that her main concern was how he fit in with the staff and the students. Jackson did not submit his employment application directly to Kerr but, instead, Kerr interviewed him, reviewed his resume and recommended to CPS that he be hired. Jackson worked at Bond for two years and Kerr considered him to be an asset to CPS.

¶ 21    Tom Krieger testified as a rebuttal witness for the Board. He had been an assistant director in the Office of Employment Relations for CPS since 2006. His duties consisted in administrating employee discipline and holding hearings related to employees who had been disciplined or discharged. Krieger was part of the Board's criminal background committee that reviewed the applicant's criminal background checks. The committee does not verify anything on the employment application other than arrest and/or conviction information. The committee ran a criminal name check on Jackson and it came back clear. Krieger testified that the Board has dismissed employees for falsifying information on their employment applications.

¶ 22    The Board fired Jackson for alleged test cheating, for not reporting test irregularities and for falsely reporting the same irregularities.  Shortly after the initial administrative hearing was to commence, the Board added another charge, that Jackson knowingly falsified his CPS application by omitting his previous employment and discharge with CPD.  After reviewing the testimony and documentary evidence, the hearing officer found that the Board failed to prove by a preponderance of the evidence any of the charges against Jackson.  Specifically, the hearing officer held that Jackson did not cheat and that Jackson did report the alleged irregularities by disclosing what he knew when he was questioned by investigators weeks later.  The hearing officer also found that the Board failed to establish that Jackson had the intent required to support the charge of falsifying his employment application.

¶ 23    On December 11, 2011, the Board issued an opinion where it accepted the hearing officer's findings of fact and its conclusion that the cheating charges against Jackson were unproven.  The Board otherwise rejected the hearing officer's conclusions and recommendations and terminated Jackson's employment because it concluded that Jackson's failure to "immediately" report the principal's alleged suggestion to cheat violated a rule found in the ISBE's testing guidelines.  The Board also found that Jackson submitted a false employment application that contained a material omission that also justified his termination.  After determining that the Board had cause for dismissal, the Board concluded that Jackson's misconduct was irremediable *per se* and terminated his employment.

¶ 24    On Jackson's complaint for administrative review, the circuit court found that the Board's decision to terminate Jackson's employment was against the manifest weight of the evidence, arbitrary and capricious.  The circuit court reversed the Board's decision and reinstated Jackson with back pay and benefits.  On appeal, the Board argues that the trial court erred in reversing its

decision because the Board had cause to discharge Jackson for falsifying his employment application and for failing to immediately report the ISAT test irregularities.

¶ 25                                   ANALYSIS

¶ 26    In administrative review cases, we review the Board's decision, not the circuit court's decision. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 162 (2006). The hearing officer acts as the fact finder and, in that capacity, hears the testimony of witnesses, determines their credibility, the weight to be given their statements, and draws reasonable inferences from all evidence produced in support of the charges against the accused. *Id*. An agency's findings of fact are considered *prima facie* true and correct. *Id*. Accordingly, a reviewing court will not reverse an agency's findings unless they are against the manifest weight of the evidence. *Id.* An agency's findings are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 88 (1992). By contrast, we employ a *de novo* standard when considering an agency's conclusion on a question of law. *James v. Board of Education of the City of Chicago*, 2015 IL App (1st) 141481, ¶ 12. Finally, we review mixed questions of law and fact under the clearly erroneous standard of review. *Id.*

¶ 27    As a court of review, we are limited to considering the evidence submitted in the administrative hearing. *Walker v. Dart*, 2015 IL App (1st) 140087, ¶ 35. The findings of the administrative agency, however, must rest upon competent evidence and be supported by substantial proof, and an agency may not consider a matter that is not in the record. *Id*. ¶ 37.

¶ 28                            I. Employment Application

¶ 29    The Board argues that the trial court erred in finding that the Board's decision to discharge Jackson for falsifying his employment application when omitting his employment and

subsequent discharge from the CPD was arbitrary or capricious. The Board contends that Jackson applied to CPS fewer than two months after the CPD fired him for mistreating an arrestee and for lying during the police investigation regarding his conduct. Nonetheless, the Board maintains, Jackson solely listed past jobs of educator, personal trainer and college intern in his application and failed to disclose his employment and termination with CPD, circumstances that would have been significant in evaluating Jackson's suitability for teaching in school.

¶ 30    Under section 34-85 of the Illinois School Code, no tenured teacher shall be removed except for cause. *Board of Education of the City of Chicago v. Illinois State Board of Education*, 160 Ill. App. 3d 769, 773 (1987)(citing Ill. Rev. Stat. 1985, ch. 122, ¶ 34-85). Written warnings must be given to a tenured teacher before dismissal if the causes assigned for dismissal are considered remediable. *Id*. Where no warning is given, the board's evidence must prove that the teacher's conduct is irremediable. *Id*. When the board fails to meet its evidentiary burden of proving that the teacher's conduct is irremediable, and when no warning has been given, the board is deprived of jurisdiction to terminate the teacher. *Id*. Falsification of an employment application is a proper ground for dismissal. *Roundtree v. Board of Review*, 4 Ill. App. 3d 695, 696 (1972). A charge of falsification involves a showing of intent to deceive the employer. *Roadmaster Corp. v. National Labor Relations Board*, 874 F.2d 448, 453 (7th Cir. 1989).

¶ 31    Here, the Board's decision to terminate Jackson's employment was against the manifest weight of the evidence because the Board failed to establish that Jackson's omission of his previous employment and termination with CPD was intentional. The CPS' application did not require disclosure of the applicant's most recent place of employment or any information about termination and discharge from previous jobs. To the contrary, the application contained just

11

three spaces for listing previous employment history and lacked any questions about discharge information or any instructions that failure to disclose discharge information would be grounds for termination.

¶ 32   *Walker v. Dart*, 2015 IL App (1st) 140087, is instructive.  In *Walker*, the plaintiff was employed as a Cook County deputy sheriff and tested positive on a random drug test after taking pills from prescriptions he received years earlier.  *Id*. ¶ 2.  The Merit Board terminated his employment concluding that the plaintiff's prescriptions were not valid at the time of the testing because they were more than one year old and that his use of the medication was an abuse of its drug policy.  *Id*.  Like Jackson, the plaintiff could not be discharged except for cause.  We reversed the Merit Board's decision to terminate the plaintiff's employment and concluded that the evidence failed to support the Merit Board's decision that plaintiff violated its drug policy when the Cook County sheriff department had no written policy that prohibited the use of older, legally prescribed medications.  *Id*. ¶ 59.

¶ 33   Similarly, here, the Board did not point to any rule, policy, directive or practice of prohibiting the omission of job terminations in an application or that the omission constituted falsification.  Therefore, just as the "use" of outdated drugs did not equal abuse in *Walter*, the "omission" of employment and termination information does not equal "falsification" when there is nothing in the record to support the Board's position that the failure to disclose the entire or more recent employment and termination was a dischargeable offense.

¶ 34   The Board argues that Jackson should have disclosed his employment and discharge with CPS pursuant to Jackson's acknowledgement in the application that the statements made in the application were "complete and that any falsification or omission may result in dismissal." However, the application lacks questions or instructions for the applicants regarding discharge or

termination information from a previous job. Further, the application itself does not state that the most recent place of employment must be listed and it contains only three spaces for prior employment precluding full disclosure of an applicant's history of employment having more than three previous jobs. Jackson testified that he had 10 jobs before he applied to CPS and he listed the jobs relevant to teaching. Based on this record, we cannot say that Jackson's omission was a deliberate attempt to conceal his previous employment history from CPS.

¶ 35    In addition, the Board failed to establish that Jackson had the required intent to sustain a falsification charge.  See *Roadmaster Corp. v. National Labor Relations Board*, 874 F.2d at 453. Jackson listed CPS administrators Andrea Kerr and principal Kerr as references on his employment application and both testified consistently that they know Jackson personally and were aware of the circumstances surrounding Jackson's employment and termination with CPD. Moreover, principal Kerr testified that she interviewed and ultimately hired Jackson at her school knowing about Jackson's employment and termination from CPD. Therefore, the Board failed to establish that Jackson had the intent to conceal his employment and discharge from CPD when in fact he disclosed both circumstances during the hiring process with CPS.

¶ 36    The Board relies on *Sindermann v. Civil Service Commission*, 275 Ill. App. 3d 917, 922 (1995) in support of its argument that the decision to discharge Jackson was justified. In *Sindermann*, the Commission discharged a police officer for omitting his employment and discharge by a former employer from his employment applications as a police officer with the Village of Gurnee. *Id*. at 919. We upheld the officer's discharge on administrative review, finding that the Commission's decision was not arbitrary where the police officer deliberately omitted material information from his employment application. *Id*. at 929. Questions 19 of the

employment application in *Sindermann* specifically asked whether the applicant had ever been discharged or asked to resign from any employment and the plaintiff responded "no." *Id*. at 919.

¶ 37    Unlike *Sindermann*, here, the employment application with CPS did not request any information nor did it contain any instructions requiring applicants to disclose whether they had been previously discharged from any employer.  In addition, contrary to *Sindermann*, where the plaintiff's testimony was internally inconsistent and not credible, here, the hearing officer did not question Jackson's credibility at any time.  Jackson explained that he did not list his employment with CPD in his CPS application because he referenced his previous employment history relevant to teaching.  Therefore, the Board's reliance on *Sindermann* is misplaced.

¶ 38                              II. Reporting Test Irregularities

¶ 39    The Board contends that Jackson's failure to "immediately report" the alleged test irregularities was another sufficient basis for the Board's discharge decision.  The Board argues that Jackson had a duty to report ISAT testing irregularities immediately because the principal asked him to open a test booklet, Jackson observed the principal peeking into the booklet and Jackson was aware students possessed answers to questions during the ISAT.

¶ 40    Initially, we note that the hearing officer, the Board, and the circuit court all concluded that the cheating allegations against Jackson were unproven. The issue before us is whether the Board had cause to discharge Jackson for a delay in reporting the ISAT testing irregularities.  We find that it did not.

¶ 41    The Board argues that Jackson's duty to report was stated in the ISAT instructions that required school staff members to "immediately report all incidents of cheating or other test irregularities by students or staff" to ISBE, citing from section 5 of the Professional Testing Practices for Educators.  The same section provides that "districts must have in place a local

testing policy that includes sanctions and measures that will be used if testing irregularities occur." Here, the Board did not present evidence of any established rules or procedures for teachers and staff to report testing irregularities. The record is devoid of any such regulations or procedures as to the time frame for making the report, to whom to report such irregularities, how to make such report, what information should be included in the report, and what are the punishments for failure to do so.

¶ 42    In *Kinsella v. Board of Education of the City of Chicago*, 2015 IL App (1st) 132694, we recently rejected the Board's attempt to dismiss a teacher in the absence of a policy regarding the alleged misconduct. In *Kinsella*, the Board argued that a teacher who reported to work with a blood-alcohol level of .053 was "under the influence" in violation of the Board policies. (internal quotations marks omitted.) *Id*. ¶ 24. The Board argued that it had a zero-tolerance policy and referred to the Board's "Employee Discipline and Due Process Policy" that provided that reporting to work while under the influence of alcohol falls within group 5 misconduct. *Id*. ¶ 25. The record in *Kinsella*, however, just as the record here, indicated that the Board had no written policy that an employee with a Breathalyzer reading of 0.05 would be dismissed. *Id*. ¶ 29. We held that the Board failed to prove that plaintiff presented any impairment and reversed the Board's decision discharging the plaintiff. *Id*. ¶ 30.

¶ 43    The instant case deals with an analogous situation. Just as in *Kinsella*, the Board did not point to a specific rule or regulation that would indicate what constitutes irregularities or what would be the time frame for reporting such irregularities. In the absence of these critical guidelines, the Board's reliance on the ISAT instructions as creating a duty to report is misplaced. Furthermore, the hearing officer as a trier of fact held that two other teachers, Miller and Banks, reported the irregularities at a later time, during the investigation proceedings but the

Board solely discharged Jackson. Accordingly, the Board's decision to discharge Jackson for his alleged failure to report testing irregularities "immediately" is arbitrary. *Id*. ¶ 32. ("Although broad discretion is accorded an administrative agency to determine what constitutes a proper cause for dismissal, it is essential to the validity of such a disciplinary action that it be reasonable and not be applied in an arbitrary manner.").

¶ 44 Similarly, the Board's allegation that Jackson was aware that the students possessed answers to questions during the ISAT is against the manifest weight of the evidence. Jackson was absolved of all the charges of test cheating. The Board accepted the hearing officer's conclusion that the Board failed to prove its charges of cheating. The record indicates that other teachers, Banks and Miller, discovered the notes, and not Jackson. There is no evidence that Jackson even saw the notes until this case was initiated. Moreover, Rachel Jachino, the ISBE representative, upon reviewing the students' notes and the math portion of the March 2010 ISAT test, concluded that the students' notes did not answer a single question on the test. Therefore, the Board failed to show that Jackson had any awareness of anything improper with respect to the notes recovered from students that would give rise to a duty to report.

¶ 45 Finally, the Board argues that Jackson's falsification of his employment application and failure to report test cheating was immoral conduct which is deemed irremediable *per se*. The Illinois School Code provides that when a teacher's conduct is immoral, cruel, negligent, criminal, or causes psychological or physical harm or injury to a student, it is irremediable *per se* and no warning is required before dismissing a teacher. 105 ILCS 5/34-85 (West 2012). Immoral conduct constitutes "shameless conduct showing moral indifference to the opinions of the good and respectable members of the community." (internal quotations marks omitted.) *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d at 165.

16

¶ 46    The Board relies on *Ahmad* for his argument that Jackson alleged misconduct was immoral.  In *Ahmad*, the teacher falsely represented herself as an agent of CPS in order to obtain over $33,000 in free school supplies from a nonprofit organization that she intended to sell at a profit for her own personal benefit, rather than to use at her school; placed at least 12 orders in the name of CPS rather than her own business; concealed her conduct from CPS; and refused to cooperate in the investigation.  *Id*. at 157-60, 165-66.  We held that the teacher's conduct was immoral, perhaps criminal and irremediable *per se*.  *Id*. at 165-67.

¶ 47    The facts of this case are not comparable to the facts in *Ahmad*.   The Board argues that Jackson engaged in immoral conduct when omitting his discharge from CPD.  However, the Board disregards the fact that the CPS application did not ask Jackson to state whether he had been discharged from any employment.  In addition, the Board contends that Jackson engaged in immoral conduct by not reporting the testing irregularities immediately but, again, the Board ignores the fact that it did not have any procedure in place detailing how and when irregularities needed to be reported.  Moreover, Jackson did report irregularities, just as the other teachers, during the CPS investigation.  Based on the evidence presented, we cannot say that Jackson's conduct was immoral or irremediable *per se*.  Accordingly, the Board's decision that Jackson engaged in irremediable misconduct that warranted his dismissal is against the manifest weigh of the evidence.

¶ 48    In sum, the Board did not meet its burden of proving by a preponderance of the evidence that Jackson falsified his employment application or that he failed to report the ISAT testing irregularities.  We affirm the circuit court's decision reversing the Board's order and reinstating Jackson with back pay and benefits.

¶ 49                             CONCLUSION

¶ 50     Based on the foregoing, we affirm.

¶ 51     Affirmed.