2023 IL App (1st) 220734

No. 1-22-0734

Order filed November 3, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ALFREDO CONTRERAS, | ) | On Petition for Review from a Final |
| | ) | Administrative Decision of the |
| Plaintiff-Appellant, | ) | Board of Education of the City of |
| | ) | Chicago |
| v. | ) | |
| | ) | Board Resolution No. 22-0427-RS6 |
| BOARD OF EDUCATION OF THE CITY OF | ) | |
| CHICAGO, PEDRO MARTINEZ, Chief | ) | |
| Executive Officer, and ILLINOIS STATE | ) | |
| BOARD OF EDUCATION | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the Board's decision to terminate a tenured teacher where that decision was based on factual finding against the manifest weight of the evidence. The Board clearly erred in concluding that the teacher's conduct was *per se* irremediable.

¶ 2    Plaintiff Alfredo Contreras appeals the Board of Education of the City of Chicago's administrative decision dismissing him from his position as a teacher. The issues presented are (1) whether the Board's findings of fact were against the manifest weight of the evidence, and (2)

whether the Board's conclusion that Contreras's conduct was *per se* irremediable was clearly erroneous. We reverse.

¶ 3                                    BACKGROUND

¶ 4       Alfredo Contreras is a tenured teacher at John F. Kennedy High School in Chicago. On April 30, 2019, the Chief Executive Officer of the Board of Education of the City of Chicago approved charges and specifications seeking Contreras's dismissal. The charges listed violations of sexual harassment, negligence and Title IX non-discrimination policies, as well as violations of the Illinois School Code.

¶ 5       The Board charged Contreras with misconduct relating to three students, S.C., N.S., and L.D. Concerning S.C., the Board alleged that in 1998 Contreras took then-student S.C. to a movie theater where he kissed and fondled her breast. As to N.S., the Board's specification alleged Contreras made inappropriate and flirtatious comments. Finally, the Board's specification alleged that Contreras had likewise made inappropriate and flirtatious comments to multiple students, including L.D. and B.T.

¶ 6       A hearing was held over two days in February and March 2020 before a mutually agreed upon hearing officer. The Board presented the testimony of George Szkapiak, principal of Kennedy High School, Camie Pratt, Chief Title IX Officer for Chicago Public Schools, and student L.D. Contreras testified in his own defense. The Board listed and subpoenaed two other witnesses, N.S. and S.C., but neither testified. After post-hearing briefing, the hearing officer concluded that the Board had failed to prove that it had cause to dismiss Contreras because there was insufficient evidence to prove he engaged in all of the conduct as alleged. The hearing officer further found that while Contreras conceded to some of the conduct, that behavior was remediable and could have been corrected through retraining.

¶ 7    The Board then issued its report, accepting the hearing officers finding that Contreras's comments were inappropriate teacher-student interaction, but rejecting the rest of the hearing officer's findings and concluding that it had sufficiently proven cause to terminate Contreras. The Board further concluded that Contreras's conduct was irremediable *per se* and terminated his employment.

¶ 8                                ANALYSIS

¶ 9    Contreras argues that the Board's findings of fact were against the manifest weight of the evidence, and even if they were not, the Board's findings do not support the decision to terminate Contreras's employment. The Board argues in response that its factual findings are supported by the evidence, and because Contreras's conduct was *per se* irremediable, it was justified in terminating his employment.

¶ 10                                A.

¶ 11    A tenured Chicago public school teacher cannot be fired except "for cause." 105 ILCS 5/34-85(a) (West 2020). A dismissed teacher appeals the Board's decision directly to the Illinois Appellate Court, and review is conducted under the Administrative Review Law. *Id.* § 34-85(a). Under the Administrative Review Law, the proper standard of review depends on whether the question presented is one of fact, of law, or a mixed question of fact and law. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50. The Board's findings of fact are held *prima facie* true and correct. 735 ILCS 5/3-110 (West 2020). Factual findings are reviewed under a manifest weight of the evidence standard., questions of law are reviewed *de novo*, and mixed questions of law and fact under a clearly erroneous standard. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998) Under the manifest weight standard, we do not disturb the Board's findings unless the opposite conclusion is clearly

evident. *Id.* However, the Board's determination of cause to dismiss is a mixed question, reviewed under a clearly erroneous standard. *Beggs*, 2016 IL 120236, ¶ 63.

¶ 12    In all, the Board made ten specific factual findings. Findings 1-4 concern allegations related to student N.S., findings 5-9 concern allegations related to student L.D. Finding 10 concerns the irremediability of Contreras's conduct as a whole. Each will be addressed in turn below.

¶ 13    As a threshold issue, the Board solicited the testimony of Camie Pratt, Chief Title IX Officer for Chicago Public Schools, as an expert in the field of Title IX policy. In its response to Contreras's request for identification of expert witnesses, the Board stated Pratt would testify to "the nature of the sexual harassment and psychological harm experienced by the alleged victims in this matter." At the hearing, Pratt was admitted for and testified to solely Title IX and sexual harassment policy. The Board cites Pratt's limited testimony to support several factual findings. Questions to Pratt were framed as hypotheticals with factual allegations which had not been proven. To the extent the Board credits Pratt's testimony to prove any of its factual allegations, such testimony is disregarded.

¶ 14                    *Unproven Specification Concerning S.C.*

¶ 15    There is no dispute that the principal charge in this case went unproven. The centerpiece of the Board's Amended Dismissal Charges was an allegation from 1998 that Contreras took a student, S.C., to a movie theater where he kissed her and fondled her breasts.[1] S.C. never testified, and the only evidence in the record is Contreras' denial that the incident took place.

¶ 16    Despite being under administrative subpoena, S.C. did not appear at the hearing. What is of interest is how the Board chose to characterize this failure of proof in ancillary proceedings below. After the hearing officer denied a second continuance to secure S.C.'s testimony, the Board

---

[1] On four prior occasions (in 1998, 1999, 2002 and 2015), the Board investigated this charge, but Contreras was never more than temporarily removed from the classroom.

took the extraordinary step of filing a complaint in the circuit court of Cook County seeking to compel a continuance of the administrative hearing. The effort proved unsuccessful, but in its complaint the Board alleged that "S.C. is an essential witness, and Plaintiff has no way of proving its case without her testimony." Further, in its emergency motion for a temporary restraining order, the Board argued "[i]f Plaintiff is not allowed to present the testimony of essential witness S.C., it will have no chance to meet its burden of proof in the dismissal hearing***[the Board] will almost certainly receive an adverse decision***, which will require Contreras's reinstatement." Thus, it seems that the Board itself recognized that the case for Contreras' dismissal depended on testimony from a witness (S.C.) that we now know never appeared.

¶ 17                          *Board's Findings Concerning N.S.*

¶ 18    **Finding 1: "In or about February 2015, Respondent said to fourteen-year-old female student N.S., 'Can we keep this between you and me? You look a lot better holding the [classroom] door than I do.'"**

¶ 19    At the hearing, Contreras conceded that he did tell N.S. "You look a lot better holding the [classroom] door than I do." Contreras testified he made this comment before class began when N.S. asked to pass out papers to students entering the classroom. Contreras denied ever saying "Can we keep this between you and me?" or any similar phrase. Contreras testified he would often compliment students as a form of acknowledgement and to make them feel welcome. Contreras also conceded that he did tell students they were being rude as a form of discipline when they criticized him or his appearance, but denied failing to acknowledge N.S. in class. Kennedy High principal George Szkapiak testified to the veracity of an investigative report concerning the incident. Szkapiak testified that two assistant principals were investigating a grading issue in Contreras's class, and during the course of the investigation heard a complaint from N.S. about the comment made to her by Contreras. The hearing officer allowed Szkapiak to testify to N.S.'s first-hand statements contained within the report over Contreras's counsel's objection that such

statements were hearsay or double hearsay. The Board's counsel assured the hearing officer that N.S. would testify to her own statement, and the hearing officer allowed Szkapiak's testimony "with that caveat." The Board did not produce N.S. to testify. Szkapiak then testified that subsequent to the incident, he met with N.S.'s parents pursuant to policy, stating "[w]e came to a consensus that [N.S.] did not feel comfortable in Mr. Contreras's class." N.S. was then transferred to another math class.

¶ 20    The hearing officer found that without N.S.'s testimony, the only fact the Board had managed to prove was that Contreras told N.S. "you look a lot better holding the [classroom] door than I do," based on his own admission. The Board had failed to prove Contreras asked to keep the statement between the two of them, or that he had "played games and/or acted flirtatiously" with N.S. The Board rejected this finding and found instead that it had proven the charge.

¶ 21    Though the strict rules of evidence are not applicable, due process generally precludes the admission of hearsay evidence in administrative proceedings. *Kimble v. Illinois State Board of Education*, 2014 IL App (1st) 123436, ¶ 79. When there is sufficient competent evidence to support an administrative decision, however, the admission of hearsay testimony is not prejudicial error. *Id.* The conformity to legal rules of evidence is not necessary because the hearing officer is "the judge of the relevancy and materiality of the evidence offered," and has "the power to make rulings, including the power to exclude evidence." 23 Ill. Adm. Code 51.60(d)(2)-(3) (2012).

¶ 22    The Board's findings must be based on competent evidence to survive review. *Jackson v. Board of Education of City of Chicago*, 2016 IL App (1st) 141388, ¶ 27. The hearing officer found that much of the investigative report upon which Szkapiak's testimony was based was hearsay, and the Board was only allowed to present this evidence by assuring the hearing officer that N.S. would

testify. Because N.S. did not testify, there is no other competent evidence to corroborate her first-hand accounts of what occurred or how she felt about the incident.

¶ 23    Accordingly, Finding 1 is against the manifest weight of the evidence. Contreras conceded he told N.S. she looked better holding the door than he did, but because the Board provided no competent evidence that Contreras said, "Can we keep this between you and me?" or words to similar effect, that element of the finding is unsupported.

¶ 24    **Finding 2: "Respondent's statement to N.S. was an inappropriate interaction between a teacher and a student."**

¶ 25    Finding 2 is within the manifest weight of the evidence.

¶ 26    **Finding 3: "Contreras later discriminated against N.S. by telling her that she was being "rude" to him and by failing to acknowledge her in class."**

¶ 27    While Contreras admitted he might have told N.S. she was being rude, the manifest weight of the evidence does not support Finding 3, that he failed to acknowledge her or that he discriminated against her in any way. The only evidence the Board offered to support this contention was Szkapiak's testimony as to N.S.'s statements given to an assistant principal, which amount to double hearsay and are not otherwise corroborated. Further, nothing in Contreras's or Szkapiak's testimony supports a finding of discrimination against N.S.

¶ 28    **Finding 4: "Contreras's statement to N.S. resulted in her transfer out of Contreras's class."**

¶ 29    Finding 4 fails because the Board presented insufficient evidence of causation between Contreras's comment and N.S.'s transfer out of his class. Szkapiak was only able to testify to the administrative steps taken after the comment was made. Szkapiak never testified that Contreras's comment was the reason the transfer was made. His testimony reveals that N.S. told an assistant principal about the comment while being questioned pursuant to an investigation into discrepancies between another student's and her grades, and when asked about disciplining N.S.,

Contreras testified to catching her cheating. Szkapiak testified to notifying N.S.'s parents about the incident, about which he said, "We came to a consensus that [N.S.] did not feel comfortable in Mr. Contreras's class." Afterwards, "we ended up changing her schedule to another math class so she wouldn't have to be in the class." Szkapiak was not asked by either side for the explicit reason for transfer. The record is silent as to the reason for N.S.'s transfer.

¶ 30                              *Board's Findings Concerning L.D.*

¶ 31    **Finding 5: "During the 2016-17 school year, Contreras asked fifteen-year-old female student L.D. why she was with her boyfriend and/or told her to "stay away" from her boyfriend, or words to that effect."**

¶ 32    Finding 5 is supported by the manifest weight of the evidence. Contreras testified that he did make a statement to L.D. regarding her boyfriend out of concern for L.D. Contreras testified that he had observed L.D's behavior become more confrontational and aggressive, that he witnessed a fight nearly break out involving L.D. and another student, and he knew L.D.'s boyfriend was involved in gangs and frequently in trouble at school. L.D. testified to Contreras making the same comment.

¶ 33    **Finding 6: "Contreras's statement to L.D. regarding her boyfriend was an inappropriate interaction between a teacher and a student."**

¶ 34    Likewise, Finding 6 is not against the manifest weight of the evidence. L.D. testified that Contreras's comment made her uncomfortable, and the evidence sufficiently supports the determination that it was an inappropriate interaction between a teacher and student.

¶ 35    **Finding 7: "From February 2015 until on or about July 25, 2018, Contreras made inappropriate and/or flirtatious comments to various other students at Kennedy High School including seventeen-year-old female student B.T. and eighteen-year-old female student L.D."**

¶ 36    As to Finding 7, the Board presented no evidence of any additional comment made to either L.D. or any other student, and Contreras expressly denied making any such comments. The Board's finding specifically mentions student B.T., who did not testify at the hearing and about whom no

evidence was presented. The Board acknowledged that the evidence presented was "less than clear," yet supports this finding by quoting its own post-hearing brief, in which it condenses over four pages of hearing testimony to conclude that Contreras "regularly devoted an inordinate amount of attention to female students and ignored male students." Szkapiak testified to a single in-class observation of Contreras assisting a group of female students. When asked why, Contreras told Szkapiak that the students were bilingual and required extra assistance. The Board did not explain what evidence undercuts Contreras's testimony or why his explanation qualified as "inordinate" attention. The remainder of the testimony does not establish any other comment Contreras made to L.D. or B.T., let alone one that was flirtatious or inappropriate.

¶ 37    Moreover, this allegation was not included in the written charges served upon Contreras. Section 34-85 requires the Board to approve written charges against teachers in order to initiate proceedings. 105 ILCS 5/34-85. "The Board's failure to notify the teacher in advance that evidence concerning these two matters would be presented at the hearing precludes the Board from seeking to base a dismissal on these charges or from considering evidence on them." *Aulwurm v. Board of Education of Murphysboro Community Unit School District No. 186*, 67 Ill. 2d 434, 437 (1977).

¶ 38    **Finding 8: "Student L.D. perceived Contreras to be staring at the breasts of female students."**

¶ 39    This allegation was likewise not included in the original or amended charges against Contreras. The Board argues that the Amended Specification should have put Contreras on notice that L.D.'s testimony would concern "verbal and non-verbal communication with students." Contreras testified, however, that prior to the hearing he had never been made aware of this allegation. The purpose of approved charges is to put the accused on notice of the accusations against them, and to provide them an opportunity to meet those allegations. Even so, L.D.'s testimony on this issue was, in the Board's words, "less than clear." When asked about looks that

made her uncomfortable, L.D. equivocated on whether the looks were directed at her, at other students, or even at the students' breasts. Yet the Board credits the "significance of her perception" in support of this finding. The Board presented no other testimony to corroborate L.D.'s, and Contreras denied the accusation. Even if the Board were permitted to seek dismissal based on this finding, it is against the manifest weight of the evidence.

¶ 40    **Finding 9: "Contreras's inappropriate comments and stares caused student L.D. to refrain from seeking instructional assistance offered by Contreras during her lunch period, and to seek help from another instructor instead."**

¶ 41    L.D. testified that she did avoid accepting Contreras's help during lunch periods, and instead sought help from Kennedy High's "math lab," a tutoring resource taught by a female instructor. The manifest weight of the evidence supports Finding 9.

¶ 42    In sum, Findings 2, 5, 6, and 9 are supported by the manifest weight of the evidence. Findings 1, 3, 4, 7, and 8 are either against the manifest weight of the evidence or wholly unsupported.

¶ 43                                    B.

¶ 44    To determine whether conduct was irremediable, we look first to the statute. Section 34-85 was amended in 1995 to define *per se* irremediable conduct as "cruel, immoral, negligent, or criminal or *** that in any way causes psychological or physical harm or injury to a student[.]" 105 ILCS 34-85(a).

¶ 45    As to whether Contreras's conduct was *per se* irremediable under section 34-85, the Board's decision characterized this conclusion as one of law, yet on appeal it argues this is instead a finding of fact. Our case law has considered it either a question of fact or a mixed question of law and fact. See *Crawley v. Board of Education of City of Chicago*, 2019 IL App (1st) 181367, ¶ 17 ("Whether a cause for dismissal is irremediable is a question of fact."); *Russell v. Board of Education of City of Chicago*, 379 Ill. App. 3d 38, 47 (2007) ("The question of whether Russell's

conduct was irremediable is a mixed question of law and fact."). The determination that conduct is irremediable *per se* excepts the Board from the statutory requirement that a teacher be given a warning and an opportunity to correct objectionable conduct before charges are approved. 105 ILCS 5/34-85(a). Because this review examines the legal effect of the Board's factual finding that Contreras's conduct was cruel, immoral, negligent, or caused psychological harm, we are presented with a mixed question of fact and law. *City of Belvidere*, 181 Ill. 2d at 205. We therefore examine the Board's factual findings under a manifest weight standard, and the application of those findings to the statutory language under a clearly erroneous standard. An administrative decision is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Beggs*, 2016 IL 120236, ¶ 50 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 46    The Board characterized Contreras's conduct as "cruel." "Cruel" is undefined in the statute, "cruelty" is commonly defined as "the intentional infliction of mental or physical suffering on a living creature, especially a human." Black's Law Dictionary (11th ed. 2019). The Board supported its characterization with hearing testimony where L.D. stated that in hindsight, she considered Contreras's comments about her relationship to be "disrespectful." The Board provided no further support for its conclusion. In light of the record, the Board's characterization of Contreras's conduct as "cruel" is clearly erroneous. There is a considerable divide between disrespectful comments and cruel conduct, and even the most deferential review of the Board's finding results in our arriving at the opposite conclusion. *Beggs*, 2016 IL 120236, ¶ 50.

¶ 47    In arguing that Contreras's conduct was immoral, the Board cites this court's opinion in *Ahmad v. Board of Education of the City of Chicago* defining immoral conduct as "shameless"

conduct showing "moral indifference to the opinions of the good and respectable members of the community." *Ahmad*, 365 Ill. App. 3d 155, 165 (2006). In *Ahmad*, the dismissed teacher impersonated an agent of Chicago Public Schools to procure school supplies at a heavily discounted cost, with the intent of selling those supplies in her own private business. *Id.* at 160. Such conduct clearly fit the definition of immoral, bordering on criminal. *Id.* at 165.

¶ 48   A survey of our prior cases addressing what constitutes "immoral" conduct demonstrates the Board's conclusion as to Contreras is unsupported. See, e.g., *Ball v. Board of Education of City of Chicago*, 2013 IL App (1st) 120136 (teacher's conduct was immoral and negligent where her failure to supervise special needs students enabled them to engage in sexual activity on school property and she gave false statements to investigators); *Jones v. Board of Education of City of Chicago*, 2013 IL App (1st) 122437 (teacher engaged in immoral conduct where she fraudulently enrolled her nonresident children in a Chicago school so they could receive tuition-free educations); *Younge v. Board of Education of City of Chicago*, 338 Ill. App. 3d 522 (2003) (teacher engaged in immoral and criminal conduct by going to work under the influence of marijuana); but see *Jackson*, 2016 IL App (1st) 141388 (teacher did not engage in immoral conduct when omitted prior termination on job application and failed to report test cheating). In these prior cases, the bar for terming conduct "immoral" was considerably higher than the facts presented in the instant case.

¶ 49   Unlike *Ahmad*, the record here does not contain "an abundance of evidence demonstrating plaintiff engaged in conduct" that could be considered immoral. *Ahmad*, 365 Ill. App. 3d at 165. No facts presented here rise to the level of a teacher's dereliction of his teaching duty or misappropriation of tens-of-thousands of dollars of fraudulently obtained school supplies for personal gain. The conclusion that Contreras's conduct is "shameless" or demonstrates "moral indifference" to such an extent it could be considered immoral is clearly erroneous.

¶ 50     The Board argues Contreras was negligent based on its finding that Contreras's conduct was inappropriate. In its report, the Board states the Illinois Pattern Jury Instruction 10.01 for Negligence and concludes, "In finding Contreras's conduct inappropriate, the Board notes that a reasonably careful teacher would not make the comments to students that Contreras made." Conduct does not rise to the level of negligence merely because it is also inappropriate. The distinction between remediable and irremediable conduct is predicated on inappropriate behavior; without it there would be nothing to remediate. Conduct must be, to varying degrees, inappropriate to be considered cause for dismissal. Section 34-85(a) strictly contemplates remediation, as it requires a warning and a provision of an opportunity to cure the cause for dismissal before formal charges may be issued. If any behavior that could be considered inappropriate is sufficient to trigger the *per se* irremediable exception to the warning requirement, then the exception swallows the rule. *Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶ 20 ("Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous.").

¶ 51     Finally, the Board argues that Contreras's conduct caused psychological harm to students. The Board presented no expert testimony as to the psychological harm suffered by the affected students, but cited N.S.'s subsequent transfer out of Contreras's class and L.D.'s testimony where Contreras's comments made her uncomfortable as interfering with both students' ability to learn. N.S.'s transfer is not itself evidence of her psychological condition, and the characterization of her feeling "uncomfortable" in Contreras's class was provided by Szkapiak and is not competent evidence of the non-testifying witness's psychological condition. L.D.'s testimony that she felt uncomfortable in Contreras's class and sought assistance from a math tutor likewise does not establish psychological harm to bring it within the definition contemplated by section 34-85. 105

ILCS 5/34-85. This court has found teachers to have inflicted psychological harm on their students in cases where they meted out corporal punishment (*M.F. Booker v. Board of Education of City of Chicago*, 2016 IL App (1st) 151151; *Brown v. Board of Education of City of Chicago*, 2021 IL App (1st) 200727-U), where they revealed to students and staff that a student was suicidal (*Williams v. Board of Education of City of Chicago*, 2022 IL App (1st) 211167-U), and actively discriminated against homeless children and youth in enrollment policies (*Prato v. Vallas*, 331 Ill. App. 3d 852 (2002)).

¶ 52    The Board argues that by using the phrase "in any way causes psychological or physical harm or injury to a student," the General Assembly intended to eliminate any requirement that the harm to a student be significant before it qualifies as *per se* irremediable. Such an interpretation impermissibly broadens the scope of this exception. The phrase "in any way" indicates the General Assembly's intent to encompass the innumerable ways a teacher may *cause* harm that are not possible to delineate within a statute; it does not serve to encompass the similarly innumerable ways students may be *impacted* by teachers' conduct. This sentence is intended to set out a category of teacher misconduct that is extreme to a greater degree than other forms of misconduct contemplated by the statute. To interpret it as the Board suggests would broaden the scope of this limited exception to allow any adverse impact on students, regardless of severity, to meet the definition.

¶ 53                          _____

¶ 54    A delay may be expected between an incident and the proceedings intended to rectify it, but there is a substantial disconnect here between the Board's insistence that Contreras's conduct was so severe that no warning was required to dismiss him, and the failure of any administrator, from principal to Board, to attempt to warn or remediate the issue with Contreras in the interim

three years. Remediable conduct is misconduct by a teacher that, if called to their attention, can ordinarily be remedied. *Ahmad*, 365 Ill. App. 3d at 163. The Board offers no reason why the conduct at issue could not be remediated by a conversation with Contreras, or the hearing officer's recommended refresher anti-harassment training. Rather, the Board's inaction emphasizes the arbitrary nature of its decision.

¶ 55    Over half of the Board's factual findings are unsupported or against the manifest weight of the evidence, and the findings actually proven (Findings 2, 5, 6, and 9) simply do not support the conclusion that Contreras's conduct was *per se* irremediable. The Board clearly erred in ordering Contreras's termination.

¶ 56                                 CONCLUSION

¶ 57    For all these reasons, the decision of the Board of Education of the City of Chicago is reversed, and this case is remanded for proceedings consistent with this order.

¶ 58    Reversed and remanded with directions.